1  REZA NAGAHI
   840 Park Drive, Apt. C
2  Mountain View, CA 94040
   (650) 965-1939
3  nagahi@hotmail.com

4  Plaintiff, Pro Se

**ADR**

FILED

2007 DEC 11  P 3: 5...

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Fee Paid
$1
(5)

5

6

7

8

9                    **IN THE UNITED STATES DISTRICT COURT**

10               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

                        **SAN JOSE DIVISION**

**C07  06268 PVT**

11  **REZA NAGAHI,**                          Case No.:_____

12                            Plaintiff,
                                             **ADMINISTRATIVE PROCEDURE**
13         vs.                                **ACT CASE** [5 U.S.C. §§ 701-706];
                                             **and**
14  **CALIFORNIA EMPLOYMENT**                 **COMPLAINT FOR**
    **DEVELOPMENT DEPARTMENT;**               **INJUNCTIVE RELIEF;**
15  **DEBORAH BRONOW, JAMES**                 **and**
    **CRAWLEY, PAULINE GEE, TALBOTT**
16  **A. SMITH, FORREST E. BOOMER,**          **DAMAGES FOR VIOLATIONS OF**
    **PETER KINDSCHI,** and **TOM**           **CIVIL RIGHTS** [42 U.S.C. §§ 1981, 1983,
17  **CAMPBELL,** in their individual and official   1985(3), 1986, and 2000d et seq],
    capacities, as present or former officers of   **FRAUD** [Cal. Civ. Code § 1572],
18  California Employment Development         **ABUSE OF PROCESS, and**
    Department;                              **DEFAMATION** [Cal. Civ. Code § 44].
19  **ELAINE L. CHAO,** in her official capacity,
    as the United States Secretary of Labor; and
20  **DOEs ONE** through **TEN,** inclusive,       **DEMAND FOR JURY TRIAL**

21                            Defendants.

22         Plaintiff Reza Nagahi ("Plaintiff") complains and alleges as follows:

23                          **I.    INTRODUCTION**

24         1.     The United States Department of Labor (USDOL) in July 2003, under the Trade Act of

25  1974, certified plaintiff as a worker adversely affected by import competition. Since that

26  certification, plaintiff has been entitled to Trade Adjustment Assistance (TAA) benefits in the

27  form of supportive services (e.g., counseling, testing, training, and placement) and financial

28  assistance (e.g., trade readjustment allowances (TRA), Additional TRA (allowances while in

─────────────────────────────────────────────

COMPLAINT                          1

1    training), job search and relocation allowances). However, acting as an agent of the USDOL,

2    California Employment Development Department (EDD) and its employees, in bad faith and for

3    purposes of harassment and discrimination, denied plaintiff's every application for such benefits.

4    Every denial was overturned on appeal, finding plaintiff to have complied with and met all

5    procedural requirements and, therefore, eligible for benefits. In its several decisions, the

6    California Unemployment Insurance Appeals Board (CUIAB) ordered EDD to provide plaintiff

7    his benefits; however, the state defendants have refused to comply and continue to act in manner

8    that is flagrantly and patently violative of express constitutional and statutory prohibitions.

9      2.     All state administrative proceedings having ended. Plaintiff is brining this suit:

10        a.     For review of agency action unlawfully withheld and unreasonably delayed;

11        b.     To seek declaratory and injunctive relief against the USDOL and EDD challenging

12    their policies and practices in the administration and implementation of the Trade Act because,

13    as they are, such policies and practices are in contravention of the Trade Act and violative of the

14    workers' constitutional and statutory rights;

15        c.     To have the state defendants comply with the law and the CUIAB decisions; and

16        d.     To seek damages against defendants Bronow, Crawley, Gee, Smith, Boomer,

17    Kindschi and Campbell for injuries resulting from their conspiracy to deprive plaintiff of his

18    constitutional and statutory rights and/or neglecting to prevent such conspiracy and deprivation,

19    their patent misconducts, willful defiance of the constitution and the established statutory laws,

20    their refusal to perform their statutory duties, defamation, fraud, and abuse of legal process.

21                **II.    <u>JURISDICTION</u>**

22    3.     This action arises under:

23        a.     The First, Fifth and Fourteenth Amendments to the United States Constitution;

24        b.     Administrative Procedure Act of 1946, U.S.C., Title 5, § 702;

25        c.     Civil Right Act of 1968, as amended; U.S.C., Title 42 §§ 1981 (Equal rights under

26    the law), 1983 (Civil action for deprivation of rights), 1985(3) (Conspiracy to interfere with civil

27    rights), 1986 (Action for neglect to prevent) and 2000d *et seq.*;

28        d.     Trade Act of 1974, as amended, U.S.C., Title 19, §§ 2271-2321; 20 C.F.R. § 617;

e.    Social Security Act of 1935, as amended; U.S.C., Title 42, § 503(a)(1);

f.    Deprivation of relief benefits, U.S.C., Title 18, § 246;

g.    Fraud, Cal. Civ. Code § 1572;

h.    Defamation, Cal. Civ. Code § 44; and

i.    Abuse of process;

as hereinafter more fully appear.

4.    The jurisdiction of this court on all defendants is founded on U.S.C., Title 28, §§ 1331 and 1343, 1346 (U.S. as a defendant), 1361 (Action to compel an officer of the United States to perform his duty), 1367 (Supplemental Jurisdiction), and 1491 (Claims against U.S. generally); and U.S.C., Title 42 § 1988 (Proceedings in vindication of civil rights).

### III.  VENUE

5.    Venue is appropriate in this court because a substantial amount of the acts and omissions giving rise to this lawsuit have occurred in this district. Additionally, two of the defendants reside in this district, and at least ten of plaintiff's witnesses, excluding expert witnesses, live in this district.

6.    Pendent venue is appropriate because the parties and proof for all causes of action are identical to those of the federal claims.

### IV.  INTRADISTRICT ASSIGNMENT

7.    This lawsuit should be assigned to the San Jose Division because a substantial part of the events or omissions which give rise to this lawsuit occurred in Santa Clara County.

### V.  PARTIES

8.    Plaintiff **REZA NAGAHI** is a worker certified by USDOL, under the Trade Act of 1974, as amended, as adversely affected due to import competition who has been subsequently found eligible for TAA and TRA benefits. Plaintiff is and at all times relevant to this Complaint has been a citizen of the state of California residing in Santa Clara County.

9.    Defendant **ELAINE L. CHAO** is and at all times relevant to this Complaint has been the U.S. Secretary of Labor. She is responsible for the administration of the Trade Act and has been directed by Congress to establish and has subsequently prescribed regulations that provide,

1    among other things, relief from injuries caused by import competition by means of adjustment

2    assistance programs for workers. She has the duty under the Trade Act to make every effort to

3    ensure that State agencies, e.g., California, fully comply with the agreements they entered into to

4    cooperatively administer the Trade Act and periodically review such compliance. She is sued in

5    her official capacity.

6        10.    Defendant **CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT**

7    (EDD) is the State Agency responsible for administering the Unemployment Insurance (UI)

8    Program. EDD is and at all times relevant to this Complaint has been a cooperating State agency

9    and an agent of the United States and, therefore, responsible for administrating the Trade Act

10   benefits programs within the State of California. This defendant has multiple offices within

11   Santa Clara County, in two of which substantial part of omissions and acts complained herein

12   has occurred.

13       11.    On information and belief, defendant **DEBORAH L. BRONOW** is and at all times

14   relevant to this Complaint has been employed as the Deputy Director of the EDD UI Branch.

15   The UI Branch, comprised of central office and statewide field operations, administers, among

16   others, the UI and Trade Act benefit programs and EDD's benefit accounting and overpayment

17   activities. She is responsible in whole or in part for creation, interpretation and implementation

18   of policies for and the administration of the Trade Act benefits programs within the State of

19   California and is subject to all legal requirements referred to in this Complaint. She is a resident

20   of Sacramento County, California. She is sued in her official and individual capacities.

21       12.    On information and belief, defendant **TALBOTT A. SMITH** is and at all times

22   relevant to this Complaint has been employed as the Chief of the EDD's Unemployment

23   Insurance Division Central Office (UIDCO) in Sacramento, California. UIDCO Coordinates the

24   program activities across the branch, with other Department entities, state agencies, and its

25   federal partners, and oversees the UI program. The Division Offices are also the headquarters

26   offices for the call centers and adjudication centers. He is responsible in whole or in part for

27   creation, interpretation and implementation of policies for and the administration of the Trade

28   Act benefits programs within the State of California and is subject to all legal requirements

referred to in this Complaint. He is a resident of Sacramento County, California. He is sued in his official and individual capacities.

13. On information and belief, defendant **FORREST E. BOOMER** is and at all times relevant to this Complaint has been employed as the Assistant Chief of the UIDCO in Sacramento, California. He is responsible in whole or in part for creation, interpretation and implementation of policies for and the administration of the Trade Act benefits programs within the State of California and is subject to all legal requirements referred to in this Complaint. He is a resident of Sacramento County, California. He is sued in his official and individual capacities.

14. On information and belief, defendant **JAMES CRAWLEY** is and at all times relevant to this Complaint has been employed as a Trade Adjustment Appeals Specialist at the EDD's UI Division in Sacramento, California. He is responsible in whole or in part for policy interpretations, benefits determinations, and administration of the Trade Act within the State of California, and is subject to all legal requirements referred to in this Complaint. He is a resident of Sacramento County. He is sued in his official and individual capacities.

15. On information and belief, defendant **PETER KINDSCHI** is and at all times relevant to this Complaint has been employed as the Trade Act Program Manager and Site Supervisor at the EDD's Sunnyvale and Campbell, California UI Branches (UIBs). He is responsible in whole or in part for policy creation, implementation and interpretation and the administration of the Trade Act benefits programs at the said UIBs, and is subject to all legal requirements referred to in this Complaint. He is a resident of Santa Clara County. He is sued in his official and individual capacities.

16. On information and belief, defendant **PAULINE GEE** was and at a period of time relevant to this Complaint had been a Trade Act Specialist at Sunnyvale UIB. She was responsible in whole or in part for the policy interpretations, benefits determinations, and administration of the Trade Act at the Sunnyvale UIB, and is subject to all legal requirements referred to in this Complaint. She is a resident of Santa Clara County. She is sued in her official and individual capacities.

17. On information and belief, defendant **TOM CAMPBELL** is and at all times relevant to

1   this Complaint has been employed as the State Trade Act Coordinator in Sacramento. He is

2   responsible in whole or in part for the administration and coordination of the Trade Act within

3   the State of California, and is subject to all legal requirements referred to in this Complaint. He

4   is a resident of Sacramento County. He is sued in his official and individual capacities.

5      18.   Plaintiff is ignorant of the true names and capacities of the defendants sued in this

6   litigation as **DOEs ONE** through **TEN**, inclusive and, as a result, sues these defendants by these

7   fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of

8   these defendants once they have been ascertained. Plaintiff is informed and believes and

9   thereupon alleges that each of the fictitiously named defendants is in some manner responsible

10   for the injuries and damages to plaintiff alleged in this Complaint.

11                  **VI.  STATUTORY FRAMEWORK**

12      19.   On October 11, 1962, Congress, concerned about the effects of the globalization of

13   national economies and the rapid pace of economic change, enacted the Trade Expansion Act

14   (Pub. L. No. 87-794; 76 Stat. 872), which, among other things, focused federal efforts on

15   adjustment assistance programs designed to assist U.S. workers displaced by foreign trade and

16   increased imports.

17      20.   On January 3, 1975, Congress substantially modified and enhanced the Trade

18   Expansion Act by enacting the Trade Act of 1974 (the "Act") (Pub. L. No. 93-618, 88 Stat.

19   1978) (codified as amended at 19 U.S.C. § 2101 et seq.)[1].

20      21.   The purpose of the Act, among other things, is to "provide adequate procedures to

21   safeguard American industry and labor against unfair or injurious import competition, and to

22   assist industries, firm [sic], workers, and communities to adjust to changes in international trade

23   flows," [19 U.S.C. § 2102] and to assist workers to return to suitable work [20 C.F.R. § 617.2].

24      22.   The United States Secretary of Labor (the "Secretary") was authorized by Congress to

25   prescribe and subsequently promulgated regulations to carry out the Act including the provisions

26

27   [1] The Trade Act of 1974, passed during a mood of congressional largesse, resulted in large
measure from "[c]ongressional frustration with the slow and ineffectual distribution of TRA

28   benefits under the 1962 Act." *International Union. U.A.W. v. Brock*, 816 F.2d 761, 765 (D.C.
Cir. 1987).

1   of Part 2, Subchapter II of the Act (Adjustment Assistance for Workers), codified as amended at

2   20 C.F.R. § 617[2]. 19 U.S.C. § 2320. The Secretary appended Part 617 regulations with three

3   appendices which provided further instructions as to:

4            a.    The Standard for Claim Filing, Claimant Reporting, Job Finding, and Employment

5   Services (Appendix A, §§ 5000-5099);

6            b.    Standard for Claim Determinations—Separation Information (Appendix B, §§

7   6010-6015); and

8            c.    Standard for Fraud and Overpayment Detection (Appendix C, §§ 7510-7515).

9       23.   To assist workers who have lost their jobs because of import competition, the Act

10  established the Trade Adjustment Assistance (TAA) program which included provisions for

11  benefits in the form of (1) supportive services (e.g., counseling, testing, training, placement), and

12  (2) financial assistance (e.g., Trade Readjustment Assistance (TRA) and Additional TRA

13  (weekly allowances while in training), job search and relocation allowances). 19 U.S.C. § 2291;

14  20 C.F.R. § 617.1.

15      24.   A two-step process must be completed before an individual worker is eligible to receive

16  TAA benefits. Under the Act's scheme, a group of workers, their union, or some other

17  authorized representative may petition the Secretary to certify that their firm has been adversely

18  affected by imports. 19 U.S.C. §§ 2271-2273. If the Secretary issues a certificate of eligibility

19  for such a group, workers within that group who meet certain standards of individual eligibility

20  may then apply to the state agency and receive benefits established by the Act. The state agency

21  determines whether an individual is covered by the certification and whether TRA and TAA

22  benefits should be awarded. 19 U.S.C. §§ 2291-2298; 20 C.F.R. §§ 617.10-617.49. These

23  benefits are funded entirely by the Federal Government, as is the cost of administering the

24  program. 19 U.S.C. § 2313.

25      25.   While the Secretary cannot delegate her certification duties, the Act does permit her to

26  contract out the job of making individual eligibility determinations to the state agencies that

27

28  [2] The regulations in Part 617 were formerly codified in 29 C.F.R. Part 91. They were
    redesignated and revised at 51 FR 45848, Dec. 22, 1986.

1  administer state unemployment insurance programs. The Secretary has in fact entered into such

2  agreements with unemployment insurance agencies in each State and in the District of Columbia

3  and Puerto Rico. Pursuant to the agreements, each of these "cooperating [State] agencies,"

4  becomes an "agent of the United States," and has the duty to:

5        a.  Process applications and review benefit entitlement determinations in the same

6  manner and to the same extent as determinations under the applicable State law;

7        b.  Provide for the coordination of the administration of the benefits and use federal

8  funds to pay for the TAA benefits to eligible individuals;

9        c.  Cooperate with the Secretary and with other State and Federal agencies in

10  providing payments and services; and

11        d.  Advise each worker who applies for UI of the TAA benefits and the procedures

12  and deadlines for applying for such benefits, facilitate the early filing of petitions; and, advise

13  each adversely affected worker to apply for training before, or at the same time, the worker

14  applies for TRA, and as soon as practicable, interview the adversely affected worker regarding

15  suitable training opportunities available to the worker and review such opportunities with the

16  worker. 19 U.S.C. § 2311.

17      26.  To qualify for TRA benefits under the Act, a worker must have had, in the 52-week

18  period ending with the week in which total or partial separation occurred, at least 26 weeks of

19  employment at wages of $30 or more a week in *adversely affected* employment with a single

20  firm or subdivision of a firm."[3] 19 U.S.C. § 2291(a)(2). (Emphasis added).

21      27.  In 1988, Congress made TAA training an entitlement, whereas it previously had been

22  contingent upon available funding. The Act requires that if the Secretary determines that—

23

24  [3] *Adversely affected employment* means employment in a firm or appropriate subdivision of a
firm,…, if workers of such firm or appropriate subdivision are certified under the Act as eligible

25  to apply for TAA. 20 C.F.R. 617(3)(b). *Total separation* means a layoff or severance of an
individual from employment with a firm in which, or in a subdivision of which, adversely

26  affected employment exists. 20 C.F.R. 617(3)(ll). *Partial separation* means that during a week
ending on or after the impact date specified in the certification under which an adversely affected

27  worker is covered, the individual had: (1) Hours of work reduced to 80 percent or less of the
individual's average weekly hours in adversely affected employment; and (2) Wages reduced to

28  80 percent or less of the individual's average weekly wage in such adversely affected
employment. 20 C.F.R. 617(3)(cc).

---

(A) there is no suitable employment...available for an adversely affected worker,

(B) the worker would benefit from appropriate training,

(C) there is a reasonable expectation of employment following completion of such training,

(D) training approved by the Secretary is reasonably available to the worker from either governmental agencies or private sources...

(E) the worker is qualified to undertake and complete such training, and

(F) such training is suitable for the worker and available at a reasonable cost,

the Secretary *shall* approve such training for the worker. Upon such approval, the worker *shall* be entitled to have payment of the costs of such training...paid on his behalf by the Secretary directly or through a voucher system.

19 U.S.C. § 2296(a)(1). (Emphasis added.)

28.    "In order to assist the adversely affected worker to complete training approved for him under and in accordance with regulations prescribed by the Secretary, payments may be made as TRA for up to 52 additional weeks in the 52-week period that—

(A) follows the last week of entitlement to trade readjustment allowances otherwise payable under this part; or

(B) begins with the first week of such training, if such training begins after the last week described in subparagraph (A).

Payments for such additional weeks may be made only for weeks in such 52-week period during which the individual is participating in such training."

19 U.S.C. § 2293(a)(3). The Act further provides that:

Notwithstanding any other provision of this section, in order to assist an adversely affected worker to complete training approved for the worker under section 2296 of this title *which includes* a program of remedial education (as described in section 2296 (a)(5)(D) of this title), and in accordance with regulations prescribed by the Secretary, payments may be made as trade readjustment allowances for up to 26 additional weeks in the 26-week period that follows the last week of entitlement to trade readjustment allowances otherwise payable under this part.

19 U.S.C. § 2293(g).[4] (Emphasis added) Therefore, the Act provides 78 (104 weeks, *see* fn. 3) weeks of Additional TRA to workers, after exhaustion of their Basic TRA[5], while they are in a

---

[4] For those petitions filed after November 4, 2002, the 26 weeks of Additional TRA was increased to 52 weeks. EDD Fact Sheet, TAA, DE 8714X Rev. 9 (9-03) (INTERNET).

[5] *Basic TRA* are 52 weekly payments paid during the 104-week beginning with the first week following the week in which total qualifying separation occurred. 20 C.F.R. 617(3)(m)(1)(ii).

1  training.

2      29.    The Secretary has prescribed that "[a] [TRA] may not be paid for an additional week if

3  the adversely affected worker who would receive such allowance did not make a bona fide

4  application to a training program approved by the Secretary within 210 days after the date of the

5  worker's first certification of eligibility to apply for adjustment assistance issued by the

6  Secretary, or, if later, within 210 days after the date of the worker's total or partial

7  separation...." 19 USC § 2293(b). Federal courts have determined that the 210-day rule "was not

8  intended to act as a jurisdictional prerequisite to additional TRA benefits. Rather, it was

9  designed to prevent workers who have no genuine interest in training from enrolling in programs

10  at the last minute merely to take advantage of available funds."[6] Federal courts have further

11  found that Secretary's interpretation to be inconsistent with Congress' intent in that the

12  "application of the 210-day rule does nothing to further the Act's remedial purpose and

13  everything to frustrate it."[7] The Act is silent on the definition of a Bona Fide Application for

14  Training. However, the Secretary defines it as: "[a]n individual's signed and dated application

15  for training filed with the State agency administering the TAA training program, on a form

16  necessarily containing the individual's name, petition number, local office number, and specific

17  occupational training. This form shall be signed and dated by a State agency representative upon

18  receipt." 20 C.F.R. § 617.3(i).

19      30.    The Secretary has authorized a State agency to establish supplemental procedures, not

20  inconsistent with the Act or Part 617 or procedures prescribed by the USDOL, to further

21  effective administration of Part 617. 20 C.F.R. § 617.54.

22      31.    The Secretary has prescribed that workers have inviolate rights to TAA, which are to be

23  protected in the same manner and to the same extent as the rights of persons to UI are protected

24  under the applicable State law. "Such measures shall include protection of applicants for TAA

25  from waiver,..., except as provided in Sec. 617.55. In the same manner and to the same extent,

26

27  _____

28  [6] *Union. U.A.W. v. Dole*, 911 F.2d 732, 1990 U.S. App. LEXIS 23764 (1990).
   [7] *Id.,* at *International Union. U.A.W. v. Dole*, 911 F.2d 732, 1990 U.S. App. LEXIS 23764
   (1990) (citing *International Union. U.A.W. v. Brock*, 816 F.2d 761, 765 (D.C. Cir. 1987)).

1  individuals shall be protected from discrimination and obstruction in regard to seeking, applying

2  for, and receiving any right to TAA." 20 C.F.R. § 617.56.

3    32.    The standard for claim filing is provided for by the Secretary as follows:

4                A. Federal law requirements.
                    …

5                Section 303(a)(1) of the Social Security Act requires that the
             State law provide for:

6                "Such methods of administration * * * as are found by the
             Secretary to be reasonably calculated to *insure full payment of*

7             *unemployment compensation when due.*"
             B. Secretary's interpretation of federal law requirements.

8                …

9             2. The Secretary interprets all the above sections to require that a
             State law provide for:

10            a. Such contact by claimants with public employment offices or
             claims offices or both,

11               …

12            (2) that claimants are afforded such placement and other
             employment services as are necessary and appropriate to *facilitate*

13            *their return to suitable work as soon as possible*; and
             b. *Methods of administration which do not unreasonably limit the*

14            *opportunity of individuals to establish their right to unemployment*
             *compensation due under such States law.*

15

16  Sec. 5000, Appendix A to Part 617. (Emphasis added.) *See also* 20 C.F.R. § 640.1.

17    33.    For determination of and notices to workers for eligibility, the Secretary provides:

18            (a) Determinations of initial applications for TRA or other TAA.
             The State Agency … *shall* upon the filing of an initial application

19            for TRA or other TAA *promptly* determine the individual's
             entitlement to such TRA or other TAA under this part 617.…

20            (b) Determinations of subsequent applications for TRA or other
             TAA. The State agency *shall*, upon the filing of an application for

21            payment of TRA, … , with respect to a week, *promptly* determine
             whether the individual is eligible for a payment of TRA, … , with

22            respect to such week, and, if eligible, the amount of TRA, … , for
             which the individual is eligible. …

23            (c) Redeterminations. The provisions of the applicable State law
             concerning the right to request, or authority to undertake,

24            reconsideration of a determination pertaining to a claim for UI
             under the applicable State law *shall* apply to determinations

25            pertaining to all forms of TAA under this part 617.
             (d) Use of State law. In making determinations or redeterminations

26            under this section, or in reviewing such determinations or
             redeterminations under Sec. 617.51, a State agency *shall* apply the

27            regulations in this part 617. …
             (e) Notices to individual. The State agency *shall* notify the

28            individual in writing of any determination or redetermination as to

COMPLAINT                                    11

entitlement to TAA. Each determination or redetermination *shall* inform the individual of the reason for the determination or redetermination and of the right to reconsideration or appeal in the same manner as determinations of entitlement to UI are subject to redetermination or appeal under the applicable State law.

(f) Promptness. *Full payment of TAA when due shall be made with the greatest promptness that is administratively feasible.*

(g) Procedure. Except where otherwise required by the Act or this part 617, the procedures for making and furnishing determinations and written notices of determinations to individuals, *shall* be consistent with the Secretary's "Standard for Claim Determinations—Separation Information," Employment Security Manual, part V, sections 6010-6015 (appendix B of this part).

20 C.F.R. § 617.50. (Emphasis added.) In *Standard for Claim Determinations—Separation Information,* the Secretary provides:

**6010    Federal Law Requirements.**

Section 303(a)(1) of the Social Security Act requires that a State law include provision for:

"Such methods of administration ... as are found by the Secretary to be reasonably calculated to *insure full payment of unemployment compensation when due.*" ...

**6011    Secretary's Interpretation of Federal Law Requirements.**

The Secretary interprets the above sections to require that a State law include provisions which will insure that:

A.    Individuals who may be entitled to unemployment compensation are furnished such information as will *reasonably afford them an opportunity to know, establish, and protect their rights* under the unemployment compensation law of such State, and

B. The State agency obtains and records in time for the *prompt determination and review of benefit claims* such information as will reasonably insure the *payment of benefits to individuals to whom benefits are due.*

...

**6013    Claim Determinations Requirements Designed To Meet Department of Labor Criteria:**

A. Investigation of claims. The State agency is required to obtain promptly and prior to a determination of an individual's right to benefits, such facts pertaining thereto as will be sufficient reasonably to *insure the payment of benefits when due.* This requirement embraces five separate elements:

1. *It is the responsibility of the agency to take the initiative in the discovery of information. This responsibility may not be passed on to the claimant or the employer.*

2. Evidentiary facts must be obtained as distinguished from ultimate facts or conclusions.

3. The information obtained must be sufficient reasonably to *insure the payment of benefits when due.* .... On the other hand, the *investigation should not be so exhaustive and time-consuming as*

1

*unduly to delay the payment of benefits* and to result in excessive costs.

2

4. Information must be obtained promptly so that the *payment of benefits is not unduly delayed.*

3

…

4

Sections 6011-6013, Appendix B to Part 617. (Emphasis added.) *See also,* 20 C.F.R. §§

5

617.51, 640.1, 640.2, 640.4.

6

34.   To ensure the state's compliance with the Standard for Benefit Payment Promptness [20

7

C.F.R. § 640 et seq.], the Secretary in 20 C.F.R. § 640.2 provides:

8

…

9

(b) Compliance. Section 303(b)(2) of the Social Security Act, 42 U.S.C. 503(b)(2), provides in part that:

10

Whenever the Secretary of Labor,…, finds that in the administration of the law there is:

11

(1) * * *

12

(2) a failure to comply substantially with any provision specified in subsection (a) of this section;

13

the Secretary of Labor *shall* notify such State agency that further payments will not be made to the State until the Secretary of Labor

14

is satisfied that there is no longer any such * * * failure to comply.

Until he is so satisfied, he *shall* make no further certification to the

15

Secretary of the Treasury with respect to such State * * *.

16

*Id.* (Emphasis added.) Furthermore, to enforce this standard, the Secretary "*shall* pursue any of

17

the following remedial steps" before applying provisions of § 640.2:

18

(1) Initiate informal discussion with State agency officials.…

(2) Conduct an evaluation of the State's benefit payment processes

19

and analyze the reasons for the State's failure to meet the standard.

(3) Recommend specific actions for the State to take to improve its

20

benefit payment performance.

(4) Request the State to submit a plan for complying with the

21

standard by a prescribed date.

(5) Initiate special reporting requirements for a specified period of

22

time.

(6) Consult with the Governor of the State regarding the

23

consequences of the State's noncompliance with the standard.

(7) Propose to the Governor of the State and on an agreed upon

24

basis arrange for the use of expert Federal staff to furnish technical

25

assistance to the State agency with respect to its payment operations.

26

27

20 C.F.R. § 640.8. (Emphasis added.)

28

35.   The Secretary, in response to the overriding concern of the U.S. Supreme Court in

1   *California Department of Human Resources v. Java*, 402 U.S. 121 (1971)[8] with delay in

2   payment of unemployment compensation to eligible individuals, including delays caused

3   specifically by the adjudication process, prescribed 20 C.F.R. § 650., which conditioned states'

4   receipt of federal grants on insuring full payment of unemployment compensation when due and

5   the prompt adjudication and appeal of state's benefit determinations. 20 C.F.R. § 650.1.

6   Whenever the Secretary finds that in the administration of the law there is "[a] failure to comply

7   substantially with any provision specified in subsection (a) [303(a)]; the Secretary of Labor *shall*

8   notify such State agency that further payments will not be made to the State until he is satisfied

9   that there is no longer any such denial or failure to comply. Until the Secretary of Labor is so

10   satisfied, he *shall* make no further certification to the Secretary of the Treasury with respect to

11   such State * * *." 20 C.F.R. § 650.2(c)(2). (Emphasis added.)

12      36.     Under the Federal-State UI Compensation program, the weekly amount payable in an

13   Extended UI benefit, is prescribed by the Secretary to be:

14         (a) Total unemployment.

15         (1) The weekly amount of Extended Benefits … in the individual's eligibility period shall be the amount of regular compensation payable to the individual for a week of total unemployment during

16         the applicable benefit year….

17         …

18   20 C.F.R. § 615.6.

19      37.     Title VI of the Civil Rights Act of 1964 at 42 U.S.C. § 2000d provides, "[N]o person in

20   the United States shall, on the ground of race, color, or national origin, be excluded from

21   participation in, be denied the benefits of, or be subjected to discrimination under any program

22   or activity receiving Federal financial assistance."

23                        **VII. <u>FACTUAL ALLEGATIONS</u>**

24          **A. Plaintiff's Layoff And Petition For Trade Act Certification**

25      38.     Plaintiff was laid off on June 28, 2002, by his San Jose, California employer,

26   Electroglas, Inc., where he worked as a Senior Manufacturing Engineer since May 2001.

27   Plaintiff contacted EDD and applied for UI benefits.

28

---

[8] California Department of Human Resources is the former name for EDD.

39.    July 1, 2002. Plaintiff contacted Sunnyvale UIB and spoke with Ms. Donna regarding training, who instructed plaintiff to obtain training information from Sunnyvale UIB.

40.    July 11, 2002. As requested by EDD, plaintiff visited Sunnyvale UIB and expressed interest in training. There, plaintiff, as directed by EDD staff, contacted EDD's main phone line and spoke with Mr. Salvador who stated that he would send plaintiff a packet of information regarding TAA program and benefits.

41.    July 13, 2002. As requested by EDD, plaintiff submitted an application for TAA (EDD Form DE 8308r3) to EDD staff at Sunnyvale UIB. Plaintiff met all procedural requirements and began receiving regular weekly UI benefit of $330.00.

42.    July 31, 2002. Plaintiff received a Telephone Interview Notification (EDD Form DE 4800/Z) scheduling an interview for August 6, 2002; at issue: plaintiff's eligibility for TRA.

43.    August 6, 2002. Defendant Crawley interviewed plaintiff by phone and found him ineligible for TRA because plaintiff's "separation had not been certified as adversely affected by DOL." Defendant Crawley recorded this interview and his decision on an EDD form titled "RECORD OF CLAIM STATUS INTERVIEW," which has been designed and generated by EDD for the Trade Act eligibility determinations and it references Title 20, C.F.R. § 617.3 [19 U.S.C. § 2291] (Qualifying requirements for workers) and 20 C.F.R. § 617.11 [19 U.S.C. § 2319] (Definitions). This Form is for EDD's internal records. Additionally, defendant Crawley issued a "Notice of Ineligibility for TAA/TRA under the Trade Act of 1979, as Amended," (EDD Form DE 8313Dr3), having marked section A and subsection A.4., notifying plaintiff of his disqualification and citing the foregoing sections of the Act. Plaintiff timely appealed.

44.    August 29, 2002. Mr. Jim Bufford, Alternate Manager at EDD's Special Claims Office, advised plaintiff to withdraw his appeal and apply for a certification with the USDOL. Plaintiff complied.

45.    October 27, 2002. Plaintiff and two of his former coworkers from Electroglas filed a petition for TAA with USDOL in Washington, D.C.

46.    November 29, 2002. USDOL notified plaintiff and his co-petitioners that they had to file a new petition using a newly revised form.

47.    December 9, 2002. Plaintiff and his coworkers filed a new petition for TAA with the USDOL and a copy was delivered to Mr. Ron Peters, TRA Specialist at Sunnyvale UIB.

48.    January 3, 2003. Due to US Postal Service's error and failed delivery, plaintiff resubmitted the petition for TAA to USDOL.

49.    January 4, 2003. Plaintiff's initial UI claim was exhausted.

50.    January 14, 2003. EDD requested plaintiff to file an application for temporary extended UI. Plaintiff complied.

51.    January 22, 2003. EDD approved plaintiff's application for temporary extended UI. The benefits were backdated by EDD to begin on January 5, 2003 for a weekly amount of $330.00 for 13 weeks.

52.    January 31, 2003. USDOL issued adverse determination on plaintiff's petition.

53.    March 25, 2003. Plaintiff applied to USDOL for administrative reconsideration.

**B. Plaintiff's Certification and Application for TAA Benefits**

54.    July 14, 2003. USDOL issued a Notice of Revised Determination on Reconsideration, certifying that "[a]ll workers at Electroglas, Inc.,…, are eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974."

55.    July 30, 2003. As directed by Mr. Peters, plaintiff attended the TAA orientation held at Sunnyvale UIB. There, Mr. Peters directed those interested in training to go through the North Valley (NOVA) office, EDD's Workforce Investment Act (WIA) partner, for an assessment—a prerequisite for TAA training approval. Also plaintiff informed EDD's training specialist that his training program of interest was the Master of Science (M.S.) degree in Industrial and Systems Engineering (ISE) at San Jose State University (SJSU) and that plaintiff had begun attending classes in that program.

56.    July 31, 2003. As requested by EDD, plaintiff mailed another TAA application accompanied with a copy of USDOL Certification to defendant Campbell in Sacramento, California. Plaintiff went to NOVA and discussed training programs.

57.    August 2, 2003. Plaintiff received EDD's Telephone Interview Notification set for August 8, 2003 to discuss plaintiff's availability to accept work while attending school.

1   58.   August 11, 2003. As requested by EDD, plaintiff completed NOVA's Intake process.

2   59.   August 12, 2003. EDD issued a newly revised Filed Operations Manual providing field

3   agents/specialists all instructions necessary to administer the Act with references to the Act and

4   the regulations prescribed by USDOL.

5   60.   September 5, 2003. Plaintiff informed his NOVA counselor that he was interested in a

6   M.S. ISE program at SJSU.

7   61.   October 9, 2003. EDD sent plaintiff a Telephone Interview Notification set for October

8   15, 2003 to discuss plaintiff's TRA and TAA eligibility. The Form enumerated various questions

9   that would be asked to establish plaintiff's eligibility for TRA and TAA.

10  62.   October 10, 2003. Defendant Campbell sent a letter to plaintiff informing him of having

11  been certified by USDOL and referring to the Act, the letter discussed the basic eligibility

12  criteria for the benefits under the Act.

13  63.   October 15, 2003, defendant Crawley telephonically interviewed plaintiff and directed

14  plaintiff to file a new UI claim.

15  64.   October 16, 2003. EDD found plaintiff to meet "the criteria set forth in 19 U.S.C. §

16  2291 and 20 C.F.R. § 617.11 to receive TRA," and therefore "eligible" to receive Basic TRA.

17  EDD recorded its decision on an internal form (DE 2403 TAA Eligibility) and sent plaintiff a

18  Notice of Initial Entitlement to TRA/TAA Benefits (EDD Form DE 8313Cr4), which referred to

19  sections 231, 232, 233, and 247 of the Act.

20  65.   October 30, 2003. Defendant Crawley sent plaintiff a "Notice Regarding Eligibility for

21  Basic TRA" (EDD Form DE 8314r2; referring to Sec. 231 of the Act (19 U.S.C. § 2291; 20

22  C.F.R. § 617.11), which informed plaintiff that he was eligible to receive a weekly benefit of

23  $330.00 for 13 weeks starting October 19, 2003. Later, on the same day, defendant Crawley

24  found plaintiff to be not eligible for the same because plaintiff had "potential entitlement for a

25  new UI Claim or extension," and therefore had not exhausted his UI claim. Defendant Crawley

26  informed plaintiff of this decision by sending him a second Notice Regarding Eligibility for

27  Basic TRA (EDD From DE 8314r2).

28  66.   November 4, 2003. Mr. Peters sent plaintiff a letter accompanied by a form titled

COMPLAINT                                    17

1    "Trade Readjustment Training Request Checklist," which listed tasks that must have been

2    completed before EDD could schedule plaintiff to TAA Workshop to discuss a training plan.

3       67.    November 10, 2003. Mr. Peters issued a "Certification of Waiver of Trade Act Training

4    Requirement" (EDD Form DE 8748r2) based on no funds being available to pay for training.

5    Mr. Peters also indicated that plaintiff was on a waiting list for funding.

6       68.    November 24, 2003. As requested by EDD, plaintiff filed a new online UI claim, which

7    established a claim beginning November 23, 2003, for 16 weeks for a weekly benefit amount of

8    $370.00. EDD notified plaintiff of a telephone interview scheduled for December 4, 2003, to

9    discuss plaintiff's eligibility for Additional TRA benefits.

10      69.    April 23, 2004. EDD denied UI benefits from February 29 through April 3, 2004 (five

11   weeks) due to plaintiff having traveled abroad to attend his father's funeral. Plaintiff acquiesced.

12      70.    July 30, 2004. Ms. Marlene Anderson, SJSU Bursar, sent Mr. Peters a letter informing

13   EDD of the Third Party Sponsors policies for enrollment fees for students EDD would sponsor.

14      71.    September 30, 2004. Defendant Deborah L. Bronow, issued the memorandum, UI

15   Program Notice (UIPN) 04-078, to Division Chiefs, Employment Development Administrators,

16   and Managers, notifying them that:

17       A.  Effective with the release of this UIPN, [EDD] no longer write
             training agreements with Trade Act participants. If a public
18           training institution refuses to enter into an agreement with
             [EDD], and the training is not available from a private training
19           vendor, or the training does not meet all six criteria of the Code
             of Federal Regulations (20 CFR 617.22 (Approval of
20           Training)), the training shall be denied. Trade Act Specialist's
             [sic] will document on the *Request For Worker Training*
21           *Approval And Allowances While in Training*, DE 8320, that the
             training does not meet "eligibility requirements", and the
22           reason(s) why the training does not meet the requirements."

23           ...

24   EDD UIPN, 04-078. (Emphasis original.)

25        **C. EDD's First Denial of TAA Benefits and Its Reversal By ALJ**

26      72.    October 6, 2004. EDD, citing 19 U.S.C. § 2293; 20 C.F.R. §§ 617.14 and 617.15,

27   denied plaintiff eligibility for Basic TRA benefits beginning May 26, 2004, due to plaintiff's

28   Basic TRA eligibility having ended on June 26, 2004. Plaintiff timely appealed.

---

73.    November 11, 2004. Plaintiff, as directed by defendant Gee, attended a second intake process at NOVA as a prerequisite for training approval.

74.    November 15, 2004. Plaintiff, for a second time, completed NOVA's WIA application process as a required step in EDD's assessment of plaintiff's application for training.

75.    December 9, 2004. Plaintiff attended the appeal of defendant Crawley's October 6, 2004 decision, held at the California Unemployment Insurance Appeals Board (CUIAB), in its San Jose Office of Appeal (SJOA), before Administrative Law Judge (ALJ) L. Delgado. EDD had established 20 C.F.R. § 617.14 (TRA, Maximum Amount) as the basis for its denial.

76.    December 29, 2004. As requested by EDD, plaintiff completed a second Career Exploration Guide (Form 7/27/01-R created by NOVA), a document required by EDD for assessment of plaintiff's application for training, and submitted it to NOVA accompanied by other supporting documents requested by EDD. Plaintiff, then, met with Defendant Gee who instructed plaintiff to attend a second TAA orientation she was giving on January 3, 2005. Plaintiff attended the said orientation.

77.    January 5, 2005. Plaintiff met with Ms. Evelyn Frith-McNeil, plaintiff's case manager at NOVA, and submitted all supporting documents that she had requested as part of the training program assessment. These documents contained information regarding: (a) third party sponsor information working with SJSU (including fee schedules; deadlines; names of contact, their phone numbers, email addresses, and functions; and policy details); (b) school registration deadlines; (c) ISE Program course list, description, times and days taught, room, credit units, and the professor's name; (d) schedule of ISE courses offered during the fall semester; (e) academic year calendar 2005/2006; (f) ISE graduate program, course requirements and detailed description of each course; (g) ISE program description; (h) examples of local job description and postings for Industrial Engineers; and (i) examples of other WIA eligible training programs offered by SJSU and sponsored by EDD, downloaded from EDD's website.

78.    January 18, 2005. As requested by Mr. Jorge Doctolero, plaintiff provided him a letter containing all the information plaintiff previously provided NOVA. Mr. Doctolero was plaintiff's case manager at NOVA in charge of the assessment of training programs to be funded

1  under the Act.

2      79.    January 21, 2005. ALJ Delgado, SJOA, issued her decision on EDD's October 6, 2004

3  denial of plaintiff's Basic TRA. ALJ Delgado, after reciting the established law, stated:

4          "20 CFR 617.52 mandates that the regulations under part 617 shall
           be construed liberally so as to carry out the purpose of the act.
5          …
           The department determination is reversed. The claimant is not
6          ineligible for basic TRA benefits under 20 CFR 617.14 beginning
           May 9, 2004. Benefits are payable provided the claimant is
7          otherwise eligible."

8  CUIAB, SJOA Decision, 1449549(TRA), p.3. Mr. Doctolero sent defendant Gee an interoffice

9  memo stating the M.S. ISE program as SJSU was approved.

10          **D. EDD's Second Denial of TAA Benefits Affirmed By ALJ**

11      80.    January 24, 2005. Defendant Gee issued her denial of plaintiff's training application.

12  On the denial form (EDD Form DE8320r5 which refers to the Act and 20 C.F.R. § 617.51),

13  defendant Gee had checked the box for "Training Related Items" as being not approved and had

14  attached five pages of explanation as to her reasoning for such denial. These reasons were: (a)

15  lack of time to generate a contract and follow established approval process; (b) difficulty dealing

16  with SJSU; and (c) missing information due to plaintiff having failed his responsibility to get all

17  the necessary information. Plaintiff timely appealed.

18      81.    January 26, 2005. Plaintiff met with Ms. Carmen Cayago at SJSU Bursar's Office who

19  contacted defendant Gee and explained the tuition payment policies and clarified any questions

20  defendant Gee had about SJSU processes pertinent to third party sponsors.

21      82.    January 28, 2005. Plaintiff provided defendant Gee further information she asked for

22  regarding the training program at SJSU.

23      83.    March 3, 2005. 41 days after ALJ Delgado reversed EDD's October 6, 2004 decision,

24  EDD issued the first check for the benefits ordered by ALJ Delgado. Furthermore, EDD reduced

25  plaintiff's weekly benefit from $370.00 to $330.00 without explanation. Defendant Gee provided

26  plaintiff a copy of an email she had sent Ms. Lourdes Atienza, Accounting Technician at SJSU

27  Bursar's Office in charge of Third Party Sponsors. In this email, defendant Gee stated that she

28  was still looking for information to complete plaintiff's TAA contracts for training at SJSU and

COMPLAINT                                    20

1   expressing a continued lack of knowledge as to how such contracts should be written. Defendant

2   Gee requested plaintiff to submit information that would help her write the contract, despite

3   plaintiff having done so on several prior occasions. The correspondence did not mention reasons

4   for the training not being appropriate.

5       84.   March 10, 2005. Defendant Gee corresponded with Ms. Atienza indicating that the

6   information she forwarded defendant Gee was inadequate and she needed more information

7   regarding plaintiff's training at SJSU.

8       85.   March 17, 2005. Defendant Gee emailed plaintiff instructing him to gather more

9   information needed for the contract covering the costs of the upcoming semester at SJSU.

10      86.   April 25, 2005. Plaintiff and defendants Gee, Crawley and Campbell attended the

11  appeal of defendant Gee's January 24, 2005 denial of plaintiff's training application, held at the

12  SJOA. Although, plaintiff was not receiving any weekly TRA benefits, defendant Crawley

13  declared the legal basis of that denial to be 20 C.F.R §§ 617.18 (TRA Disqualifications) and

14  617.22(a)(3) (Training Approval, Reasonable Expectation of Employment Following

15  Completion of Training). ALJ Larry L. Campbell heard only those issues. Ms. Atienza,

16  plaintiff's witness, testified. Defendant Campbell was served with a duces tecum subpoena to

17  present plaintiff's complete file in EDD's possession. However, due to EDD's failure to comply

18  with the subpoenas, and ALJ not having allowed plaintiff's second witness testify, the hearing

19  was continued to May 26, 2005, to remedy those omissions.

20      87.   May 12, 2005. Defendant Gee, for the first time raised a new issue, i.e., labor market

21  data, regarding training at SJSU. Defendant Gee also indicated for the first time that plaintiff had

22  not provided her such data and sent ALJ Campbell the labor market information she had

23  obtained in preparation for the upcoming May 26, 2005 hearing.

24      88.   May 26, 2005. Plaintiff and defendants Crawley, Gee and Campbell attended the appeal

25  hearing continued from April 25, 2005, ALJ Campbell presiding.

26      89.   June 23, 2005. ALJ Campbell, SJOA, affirmed EDD's denial stating: "Training

27  allowances for the training session the claimant commenced on February 11, 2005, is here

28  denied, because there is no contract available which was completed before the commencement

COMPLAINT                                         21

1  of that training." CUIAB, SJOA Decision, 1527613(TRA), p.4. Plaintiff timely appealed.

2      90.    July 22, 2005. Plaintiff provided defendant Gee information she had requested to

3  prepare a TAA contract for the upcoming semester at SJSU.

4         **E.  EDD's Third Denial of TAA Benefits**

5      91.    August 17, 2005. Defendant Gee denied plaintiff's second application for training,

6  having marked "Training" as not having been approved (EDD Form DE 8320r5). Defendant Gee

7  based her decision on: (1) plaintiff's enrollment issues, e.g., number of units to be taken,

8  matriculation status and the registration process; (2) equipment and supplies not being

9  approvable; (3) the total cost not having been added up correctly; (4) lack of a labor market

10  growth for the M.S. ISE program; (5) lack of jobs within a 25-mile radius; (6) job growth in

11  neighboring counties not being relevant; (7) "other parts of the USA" having better labor

12  markets for industrial engineers being irrelevant according to the Regulations; (8) the occupation

13  "in this local area" not meeting the six criteria for the TAA training program; and (9) there was

14  "questionable 'expectation of employment following completion of such training.'" Defendant

15  Gee referred to 20 C.F.R. § 617.22 as the law supporting her decision. Defendant Gee did not

16  hold any discussions with or requested any additional information from plaintiff to remedy any

17  insufficiencies before rendering her decision. Plaintiff timely appealed.

18      **F.  ALJ Affirming EDD's Second Denial of Benefits Reversed by the Board**

19      92.    November 15, 2005. California UI Appeals Board (the "Board") reviewed ALJ

20  Campbell's June 23, 2005 decision (SJOA Decision, 1527613) and reversed. The Board stated:

21          In this case the claimant's request for training costs was denied on
        the basis the claimant had not provided all the information

22          necessary for EDD to enter into necessary contracts for the
        training. A review of the record indicated, however, the claimant

23          did everything he could to the best of his ability to provide EDD
        with all the information necessary to process his request, including

24          the names, titles, and phone numbers of the people who would
        enter into agreements with EDD. In our view the claimant should

25          not be denied training costs because EDD personnel available to
        process his request were too busy to do so in a timely manner. It is

26          clear the claimant made his training plans known to EDD in
        sufficient time for agreements to be executed prior to tuition being

27          due and that the claimant went to great lengths to gather
        information for EDD. Accordingly, we reverse the decision of the

28          administrative law judge regarding the claimant's entitlement for
        training costs for the training in industrial systems engineering at

San Jose State University beginning January 26, 2005, provided the claimant is otherwise eligible. We note that the issue of the claimant's entitlement to training allowances is not raised in this case.

…

The decision of the administrative law judge is reversed. Training costs as provided for by the Trade Act of 1974, as amended, for the claimant's training beginning January 26, 2005, are approved, provided the claimant is otherwise eligible.

The Board Decision, AO-119984(TRA), p.4.

93.     January 18, 2006. Appeal of August 17, 2005 denial of plaintiff's second training application was held at the SJOA, ALJ Kathryn A. Sure presiding. EDD had declared the issue to be: Whether these was a reasonable expectation of employment following completion of training (20 C.F.R. § 617.22(a)(3)). Present were plaintiff and his witness, Mr. Doctolero; and, defendants Gee, Peter Kindschi, Crawley, and Campbell. Prior to the start of the proceeding, defendant Crawley brought to the ALJ's attention that the Board had rendered a decision approving plaintiff's training at SJSU. Defendant Crawley had indicated that the Board's decision had resolved the matter. However, defendant Gee stated that she does not believe that to be the case. Defendants Crawley, Kindschi and Gee then went outside the room and privately consulted after which they decided to proceed with their case notwithstanding the Board's decision approving the training. Defendant Gee testified that her denial was based on the fact that there was no labor market growth in Santa Clara County. She further testified that approval of a training that had labor market growth outside of the apparent geographic area of the person requesting it would depend on whether the applicant was willing to relocate. However, she testified that she had never asked plaintiff whether he was willing to relocate. After hearing EDD's arguments, ALJ Sure stated: "Really, I'm concerned that this has gotten too personal between this claimant and the Department." After EDD presented its case, time had run out and the proceeding was continued to February 8, 2006.

### G. EDD Requests Dismissal of Third Appeal For Promise to Grant Relief

94.     February 8, 2006. Prior to the start of the proceeding on appeal of August 17, 2005, EDD through ex parte communication with ALJ Sure indicated that it had "reversed its position and granted the relief requested." Upon plaintiff's arrival at the SJOA, ALJ Sure informed him

1   that the appeal has been dismissed because of EDD's decision to grant relief. ALJ Sure in her

2   February 9, 2006 decision, stated: "As there is no disputed issue to be decided, the appeal is

3   dismissed pursuant to California Code of Regulations, title 22, section 5066(e)."[9] CUIAB, SJOA

4   Decision, 1670987(TRA).

5       95.    February 24, 2006. 16 days after EDD stated that it had reversed its position and would

6   grant the relief plaintiff has sought; it intentionally had taken no action toward that aim. Plaintiff

7   contacted defendant Crawley to find the status of his claim. Defendant Crawley told plaintiff that

8   "I did not wish to speak to you because if I did you would speak until you were blue in the face."

9   In response to the assertion that plaintiff would be asking ALJ Sure to reopen the appeal,

10  defendant Crawley simply laughed and stated: "There is nothing to appeal." Defendant Crawley

11  further stated that plaintiff's eligibility had to be redetermined.

12      96.    February 27, 2006. Plaintiff wrote a letter to ALJ Sure explaining EDD's inaction and

13  defendant Crawley's comments, and asked that the dismissal of the appeal of EDD's August 17,

14  2005 denial be vacated and the appeal be reinstated.

15      97.    April 4, 2006. Plaintiff contacted defendant Kindschi and scheduled a meeting for April

16  11, 2006, to discuss the training benefits.

17      98.    April 11, 2006. Plaintiff met with defendant Kindschi and Ms. Ruby Quick, TRA

18  Specialist at Campbell UIB. However, plaintiff ended the discussion because defendant Kindschi

19  refused to comply with ALJ Sure's order and wanted to redetermine plaintiff's claim. Also, 43

20  days had passed and plaintiff had not heard from SJOA regarding his timely request to reinstate

21  his appeal. As such, plaintiff wrote a letter to the Presiding ALJ Cindi Rosse at SJOA explaining

22  the Board's November 15, 2005 decision approving plaintiff's training program, EDD's

23  February 8, 2006 decision to reverse its position and grant relief, the consequent dismissal of

24  plaintiff's appeal, and EDD's inaction since then, ALJ Sure's lack of response to plaintiff's

25

26  [9] Title 20, Cal. Code of Reg., section 5066 provides:
    An administrative law judge may order an appeal or petition dismissed without a hearing on the

27  following grounds:
    …

28  (e) there is no disputed issue to be decided;
    ….

1  request for reinstatement of his dismissed appeal; and, asked that the appeal of August 17, 2005

2  denial of plaintiff's training benefits to be reinstated.

3      99.  June 1, 2006. Plaintiff had not heard from SJOA regarding his timely request to

4  reinstate his appeal for 94 days. As such, plaintiff wrote a letter to Chief ALJ Juan J. Arcellana

5  in Sacramento explaining the Board's November 15, 2005 decision approving plaintiff's training

6  program, EDD's February 8, 2006 decision to reverse its position and grant relief, the

7  consequent dismissal of plaintiff's appeal, and EDD's inaction since then, SJOA inaction; and,

8  requested the appeal of August 17, 2005 denial of plaintiff's training benefit to be reinstated.

9      100.  June 9, 2006. Plaintiff was notified by the SJOA that his dismissed appeal had been

10  reinstated and scheduled to be heard on June 22, 2006 at the SJOA.

11      101.  June 14, 2006. Although plaintiff had subpoenaed defendant Gee to be present at the

12  June 22nd hearing, through ex parte communication, she notified ALJ Sure that she would no

13  longer represent EDD at any hearing related to plaintiff.

14      **H. EDD Reneged On Its Promise To Grant Relief, Third Appeal Reinstated**

15      102.  June 22, 2006. Plaintiff's reinstated appeal of the denial of his second application for

16  training was held at SJOA, ALJ Sure presiding. At issue: Whether there was a reasonable

17  expectation of employment following completion of training (20 C.F.R. § 617.22(a)(3)). In that

18  hearing, EDD conceded that plaintiff's program was an approved program under the Act and

19  that plaintiff had been in an approved training. However, defendant Crawley testified that he had

20  not granted plaintiff training benefits because plaintiff did not have a signed DE 8320r5 Form on

21  file. Transcript, June 22, 2006 SJOA Appeal Hearing, 59:7-8. When ALJ Sure heard defendant

22  Crawley describe the said form to be the same form that plaintiff had submitted twice and

23  defendant Gee had rejected both times, she stated:

24          Okay. Then he's submitted it. So just approve it. Just approve it.
           He's submitted it. Approve it. It's been approved. He's submitted
           it. Let's go. Let's move on. Now schedule a determination
25          interview. He submitted the document. It got disapproved. It got
           appealed twice. It's been approved. Why are you making him do
26          this?

27  *Id.*, 59:18-23. Upon defendant Crawley's insistence that a determination would not issue on

28  plaintiff's Additional TRA benefit because plaintiff does not have a signed DE 8320r5 Form

---

1   on file, ALJ Sure, in directing defendant Crawley, stated:

2       So I expect this – his training program has been approved. There
        should be no delay in giving him any determination on the weekly
3       benefit. So if that means you just staple what he's sent you and
        send it back with an approved stamp or whatever has to happen, I
4       don't want any further delay on this. But I don't – I don't know
        why you're creating these procedural hurdles. …

5       …

6       He's submitted an application and it's been approved. Why does
        he have to do that again?

7   *Id.*, 60:27, 61:1-10.

8       **I.  EDD Ordered to Pay Training Costs and Issue Additional TRA Determination**

9       103.  June 28, 2006. ALJ Sure issued her decision on plaintiff's appeal of the denial of his

10  training benefits under the Act and stating that EDD's determination under 617.22(a)(3) was

11  reversed and plaintiff was found to be in an approved training for a M.S. ISE at SJSU and the

12  training costs were reimbursable. CUIAB, SJOA Decision, 1844546, p.6. ALJ Sure also directed

13  EDD to "submit a determination to [plaintiff] with regard to the additional TRA extended

14  benefits based on the finding that [plaintiff] had been in an approved training program." *Id.*

15      104.  July 20, 2006. After 23 days ALJ Sure issued her decision, EDD notified plaintiff that a

16  Telephone Interview had been scheduled for July 26, 2006, to discuss plaintiff's eligibility for

17  additional weekly benefits under the TAA program.

18      105.  July 26, 2006. Defendant Crawley contacted plaintiff and asked questions and narrated

19  plaintiff's claim history beginning in June 2002. Defendant Crawley stated that he was the

20  person who made the first TAA determination in plaintiff's claim and that he had his

21  "handwriting" all over plaintiff's file. Concerned with the manner defendant Crawley was

22  conducting the interview and that the questions he was asking were unrelated to the purpose and

23  outside the scope of the interview, plaintiff asked defendant Crawley to tape record the

24  interview; however, defendant Crawley stated that he would not allow it. Defendant Crawley

25  orally denied plaintiff's application for remedial education benefit under the Act and refused to

26  issue a determination.

27      106.  August 4, 2006. Defendant Crawley issued his decision finding plaintiff ineligible for

28  Additional TRA due to not having applied for training until January 24, 2005, which defendant

1  Crawley determined to be outside the 210-day deadline established by the regulations.

2  Defendant Crawley informed plaintiff through a Notice Regarding Eligibility for Additional

3  TRA for Training Purposes Under the Act (EDD Form DE 8315r7), which cited 19 U.S.C. §

4  2293(b) (Limitation on TRA, Payments For Training Periods) ; 20 C.F.R. § 617.15(b)(2)

5  (Duration of TRA, Additional Weeks). Plaintiff timely appealed.

6      107.   October 25, 2006. Appeal of defendant Crawley's August 4, 2006 denial of plaintiff's

7  Additional TRA benefits was held at SJOA, ALJ Sure presiding. At issue: 20 C.F.R. §

8  617.15(b)(2), "Did the claimant apply for additional weeks of TRA benefits within 210 days of

9  the first qualifying separation." Although, plaintiff had subpoenaed defendant Gee, she was not

10  present. EDD was represented by defendant Crawley. ALJ Sure decided that plaintiff's witness,

11  Ms. Anna Lewis (plaintiff's NOVA case manager) was not required to testify. Defendant

12  Crawley claimed that plaintiff had not made a bona fide application for training within 210 days

13  of his certification by USDOL, as required by 20 C.F.R. § 617.15(b)(2). Defendant Crawley had

14  had strictly construed and applied 20 C.F.R. § 617.15(b)(2) and 20 C.F.R. § 617.3(i) (Definition,

15  Bona Fide Application for Training), and, as such, adamantly insisted that such application must

16  be *signed* by plaintiff, otherwise plaintiff would not receive the benefit. ALJ Sure ordered

17  defendant Crawley, who had also denied plaintiff's application for remedial training benefit, to

18  issue a written determination on that application. ALJ Sure stated: "Mr. Crawley, issue a

19  determination. Any claimant is entitled to a determination that's adverse to them. Any decision

20  that's made that's adverse to a claimant is entitled to be put in writing as a determination."

21  Transcript, October 25, 2006 SJOA Appeal Hearing, 64:15-19. Defendant Crawley, in referring

22  to plaintiff having applied for benefits to which he was entitled under the Act, falsely asserted

23  that, "[t]his is nothing but a mad grab for money from the Department," and told ALJ Sure that

24  he was "ashamed of the San Jose Office of Appeals to let [plaintiff] run under your skirt like

25  [plaintiff]'s doing." *Id.*, at 70:12-15. Then ALJ Sure asked if defendant Crawley had said

26  everything he wanted to say. Defendant Crawley said: "I said what I had to say. You said what

27  you've had to say and I've said what I have to add [sic] to say and I hope it's on record." *Id.*, at

28  70:18-20. Defendant Crawley's "skirt" comment was due to the fact that of all the decisions

1  rendered by him against plaintiff, one had been affirmed by a male ALJ (Campbell) and three

2  overturned by female ALJs (Sure and Delgado). He reiterated that comment when he once again

3  accused SJOA of misconduct by telling ALJ Sure that "[plaintiff]'s been hiding under the San

4  Jose Appeals Office skirts and you've been allowing it." *Id.*, at 96:23-25. ALJ Sure stated that

5  she took umbrage at defendant Crawley's remarks. *Id.*, at 96:26-27. ALJ Sure also stated that

6  "[t]his case has gotten entirely too personal between both parties," [*Id.*, at 96:19-20] and that

7  "[t]he state has done a complete disservice to claimants...." *Id.*, at 97:16-17.

8      108.   October 30, 2006. 263 days had passed and EDD had not granted plaintiff his training

9  benefit. Plaintiff contacted Ms. Elaine Thom, TAA specialist in USDOL San Francisco Regional

10  Office, and explained to her what exactly had transpired since the beginning of his initial filing.

11  She said that she would pursue the matter with EDD. Ms. Karen Lane-MaGee, defendant

12  Campbell's superior, called plaintiff to discuss his concerns and mentioned that Ms. Thom had

13  contacted her. Nothing resulted from either Ms. Thom's or Ms. MaGee's promises.

14      109.   November 1, 2006. Plaintiff went to Sunnyvale UIB to review his file. However, EDD

15  staff including Mr. Peters refused to allow it claiming plaintiff's file to be a "State Property,"

16  and when plaintiff suggested that he would take legal action to access that file, Mr. Peters

17  accused plaintiff of threatening a state employee, which is a crime. Plaintiff left forbidden from

18  accessing his file.

19      **J.  ALJ Reverses EDD's Fourth Denial and Orders EDD To Pay Additional TRA**

20      110.   November 3, 2006. ALJ Sure, in reversing EDD's August 4, 2006 denial of plaintiff's

21  TRA application, stated:

22          In the instant case, it is found that the department did not meet its
            requirement under the statute to provide adequate written notice of
23          the claimant's rights and obligations for additional benefits under
            the Trade Act for Trade Adjustment Assistance and Trade
24          Readjustment Allowance. Even if the department were to be
            credited with giving a [sic] "oral" notice of the deadline for
25          applying for additional benefits, which is not confirmed in either
            the computerized claim notes or the written record of the
26          conversation by the department representative, this would not meet
            the requirement under the regulations to provide adequate notice of
27          rights and responsibilities on the basis that the department has
            taken the position that the claimant not only did not meet the time
28          limits of this requirement, but did not make a "bona fide
            application."

---

COMPLAINT                              28

It is found that in light of the lack of convincing evidence by the department that it provided clear notice of an obligation of the claimant to meet certain requirements by a certain date for additional TRA benefits, it is found that he not only met the time requirements by clearly apprising the EDD that he wanted all benefits under TRA/TAA to which he was entitled, but that that [sic] he did every thing he was requested to do when he made his application and the fact that the waiver was provided acknowledges this. To the extent that he may have not met any technical requirements, under the principles of equitable estoppel, the fact that the department failed to give him clear notice of his obligations for any specific type of application stops [sic] the department from arguing that the claimant would be ineligible for additional benefits under the Trade Act simply because the timeline was not met. It is noted that the claimant would only be eligible to receive benefits for weeks in which he was in approved training and to the extent that the department disputes whether or not the claimant was or is in training for any specific dates, this issue has not been presented, but simply whether or not he is eligible for additional benefits under section 617.15(b)(2).

Accordingly, the department determination under section 617.15(b)(2) is reversed and the claimant is not ineligible for additional training benefits.

CUIAB, SJOA Decision, 1938766(TRA), p.6-7. Defendant Smith timely appealed without serving plaintiff a copy of the appeal.

111. November 28, 2006. ALJ Sure amended her November 3 decision by correcting the clerical error of omitting EDD from the list of parties appearing. CUIAB, SJOA Decision, 1938766(TRA)-Reopened.

112. January 9, 2007. The Board served defendant Smith's December 21, 2006 Written Argument on plaintiff. Defendant Smith did not serve plaintiff despite the Board's requirement that "[a] copy of any document sent to the CUIAB must be served to the opposing party."

**K. EDD Issues a Fifth Denial, Denying Training and Additional TRA**

113. March 2, 2007. 119 days after ALJ Sure decided plaintiff was eligible for Additional TRA, defendant Boomer issued a decision denying plaintiff TAA benefits (training and Additional TRA) due to, among other things, the lack of a "Bona Fide Application of Training" citing 20 C.F.R. § 617.3. This basis of denial was identical to those defendant Crawley used, which ALJ Sure had already heard and dismissed in the October 25, 2006 appeal proceeding. However, The Board advised plaintiff not to appeal defendant Boomer's decision because its decision on EDD's appeal of ALJ Sure's November 3, 2006 decision will render defendant

1    Boomer's denial moot. Plaintiff complied with the Board's recommendation.

2    **L.  Board Affirms ALJ's Decision Ordering EDD To Pay Additional TRA**

3    114.  April 5, 2007. The Board issued its decision on defendant Smith's appeal of ALJ Sure's

4    November 3 decision, stating:

5    > We have carefully and independently reviewed the record in this
> case, and have considered the contentions raised on appeal. We
6    > find that the issue statement correctly sets forth the issues in the
> case and we find no material errors in the statement of facts. The
7    > reasons for decision properly apply the law to the facts. Therefore,
> we adopt the issue statement, the statement of facts and the reasons
8    > for decision as our own.

9    > The EDD makes substantially the same contentions as those made
> during the hearing. These contentions were considered by the
> administrative  law  judge  and  treated  adequately.  As  the
10   > administrative law judge's decision is supported by the record we
> will not disturb it on appeal.

11   > …

12   > The amended decision of the administrative law judge is affirmed.
> The  claimant  is  not  ineligible  for  weekly  trade  readjustment
13   > allowances benefits.

14   The Board's Decision, AO-141881(TRA), pp.2-3.

15   115.  July 24, 2007. Plaintiff met with Ms. Kathy Parker, TAA Specialist at Campbell UIB,

16   and defendants Kindschi (in person) and Campbell (telephonically) to provide them receipts of

17   all expenses and all other documentation they had requested to prepare a training contract.

18   116.  July 26, 2007. Defendant Campbell contacted plaintiff assuring plaintiff that his

19   training claims would be paid.

20   117.  August 30, 2007. 300 days after ALJ Sure approved plaintiff's Additional TRA benefit,

21   defendant Campbell told plaintiff that the EDD's Special Claims Office (SCO), which defendant

22   Crawley represents, had decided to reduce plaintiff's weekly TRA amount from $370.00 to

23   $119.00. Defendant Campbell explained that the SCO based this on plaintiff's 2-week

24   employment in February 2005, which due to Additional TRA being basically an "Extension" UI

25   benefit directs EDD to reduce plaintiff's benefit. Defendant Campbell said that he was waiting

26   for documentation from the SCO before proceeding on plaintiff's claim. Defendant Campbell

27   was unable to recall or refer plaintiff to the law the SCO was basing this decision on.

28   **M. 694 Days After Board Ordered EDD To Pay Training Costs, EDD Pays**

118.   October 10, 2007. 694 days after the Board approved plaintiff's TAA training, EDD

paid for the costs of his training that began in January 2005.

**N.  339 Days After ALJ Ordered EDD Pay Additional TRA, EDD Refuses**

119.   December 11, 2007. 403 days after ALJ Sure had reversed EDD's decision and

approved plaintiff's Additional TRA benefit, and 245 days after the Board affirmed, plaintiff

filed this complaint to, among other things, ask this Court for assistance in bringing EDD in

compliance with the law that governs their conduct in administering the Act in California and

the decisions of the ALJ and the Board.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. §§ 701-706)
(Against All Defendants)

120.   Plaintiff incorporates by reference the allegations in Paragraphs 1-119.

121.   Defendant Chao has the duty under the Act to "make every effort to insure that

cooperating State agencies fully comply with the agreements entered into under 19 U.S.C. §

2311(a) and periodically to review such compliance." 19 U.S.C. § 2275(a).

122.   Defendant EDD is an agent of the United States and has a duty to carry out fully the

purposes of the Act and this part 617." 20 C.F.R. § 617.59(e).

123.   State defendants have unreasonably delayed providing plaintiff his TAA benefits in

violation of the Act of 20 C.F.R. § 617.50(f), and § 617.52(b)(3).[10]

124.   State defendants (except defendant Gee) have unlawfully withheld issuing a

determination on plaintiff's application for remedial education benefit in violation the Act and of

---

[10] Congress enacted the TRA portions of the Act precisely because a previous version of the program had collapsed under the weight of overly-restrictive eligibility requirements. See *United Automobile Workers v. Marshall*, 584 F.2d 390, 395 (D.C. Cir. 1978). The Senate Report to the Act makes Congress' concern abundantly clear. In the first seven years of the TRA program, established by the Trade Expansion Act of 1962, not a single worker qualified for assistance, and in the following four years only a few thousand received benefits. S. REP. No. 93-1298, 93d Cong., 2d Sess. 131 (1974). … Congressional frustration with the slow and ineffectual distribution of TRA benefits under the 1962 Act undoubtedly motivated the 1974 program reforms and general loosening of worker eligibility requirements. *See* S. REP. No. 93-1298, 93d Cong., 2d Sess. 131, 135 (1974). *International Union. U.A.W. v. Brock*, 816 F.2d 761, 765-766 (D.C. Cir. 1987).

1  20 C.F.R. § 617.50(a), (b), (e) and (g), and § 6013 of Appendix B to Part 617.

2  125.  State defendants are operating the TAA program in contravention of the Act and,

3  therefore, have failed to fully comply with their agreement with USDOL. Their conducts are

4  outside their scope of authority.

5  126.  Defendant Chao has failed her duty to ensure that EDD, as its agent, fully complies

6  with the agreement they entered into to cooperatively administer the Act.

7  127.  Plaintiff is entitled to relief in the nature of mandamus (1) to compel defendant Chao to

8  review and ensure defendant EDD's compliance with the Act, and (2) to compel state defendants

9  to follow the law, performs their duties and comply with CUIAB decisions.

10                    **SECOND CAUSE OF ACTION**
11           VIOLATION OF FIRST AMENDMENT TO THE U.S. CONSTITUTION
            (Right To Petition The Government For Redress of Grievances)
12        (Against All Defendants Except Chao, EDD, Campbell, Kindischi and Gee)

13  128.  Plaintiff incorporates by reference the allegations in Paragraphs 1-127.

14  129.  The right to petition the government for redress of grievances is a fundamental

15  Constitutional right, subject to strict scrutiny.

16  130.  Plaintiff has a clearly established right under the First Amendment to the U.S.

17  Constitution and the Act to petition the government for redress of grievances.

18  131.  At all times relevant herein, the defendants were state actors and their conduct was

19  subject to the provisions of the First Amendment to the U.S. Constitution.

20  132.  Defendant Crawley, on January 26, 2006, denied plaintiff his right to seek redress, to

21  wit, he did not issue a determination on plaintiff's application for remedial education benefit

22  under the Act knowing that plaintiff would appeal the denial.

23  133.  Defendants Bronow, Smith and Boomer had an obligation to supervise or train

24  defendant Crawley, that duty was breached, and the breach was a proximate cause of plaintiff's

25  injury. Defendant Crawley's conduct was outside of his scope of authority.

26  134.  As a result of defendant Crawley's unlawful and malicious conduct, plaintiff was both

27  deprived of his property right and the right to petition the government for redress of grievance,

28  and the due course of justice was impeded.

135. Because of defendant Crawley's deliberate indifference to and violation of plaintiff's rights, plaintiff was harmed, has been unable to receive his TAA benefits, has incurred considerable expenses and loss of time which would not otherwise have been incurred, and has suffered the loss of confidence in the administrative process, the feelings of betrayal by defendant EDD and its agents, shock, and emotional scarring, all compensable as emotional distress, and other damages.

WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer, Crawley and Does 1-10, and each of them, as set forth below.

**THIRD CAUSE OF ACTION**
VIOLATION OF FIFTH AMENDMENT TO THE U.S. CONSTITUTION
(Due Process Clause)
(Against All Defendants Except Chao and EDD)

136. Plaintiff incorporates by reference the allegations in Paragraphs 1-135, above.

137. Plaintiff has a clearly established right under the Fifth Amendment to the U.S. Constitution not to be deprived of his constitutionally protected property interest[11] without due process of law; and, a clearly established right under the Act not to be obstructed from seeking, applying for, and receiving any right to TAA.

138. At all times relevant herein, the defendants were state actors and their conduct was subject to the provisions of the Fifth Amendment to the U.S. Constitution.

139. During the January 18, 2006 appeal hearing, plaintiff realized that defendants independently and collectively intended to violate these rights and have continued to violate them since that date. Defendants' conduct was outside of their scope of authority.

140. As a result of defendants' unlawful and malicious conducts, plaintiff is being and has been deprived of his rights to due process and property interest, and the due course of justice was

---

[11] When a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a "property interest" protected by due process. Unemployment insurance and TAA benefits are a type of property interest protected by the due process clause. *Goldberg v. Kelly*, 397 U.S. 254, 261-262 (1970) (UI benefit protected); *Wilkinson v. Abrams*, 627 F.2d 650, 664 (3d Cir. 1980) (UI benefit property interest); *Tyler v. United States Department of Labor*, 752 F.Supp. 32, 40 (D. Me. 1990) (TAA benefit property interest); *American Federation of Labor—Congress Of Industrial Organizations v. Employment Development Department*, 88 Cal.App.3d 811, 820 (1979) (UI benefit property interest).

1    impeded and denied in violation of the Act and the Fifth Amendment to the U.S. Constitution.

2        141.   Because of defendants' deliberate indifference to and violations of plaintiff's rights,

3    plaintiff was harmed, has incurred considerable expenses and loss of time which would not

4    otherwise have been incurred, has been unable to receive his TAA benefits, and has suffered the

5    loss of confidence in the administrative process, the feelings of betrayal by defendant EDD and

6    its agents, loss of dignity, embarrassment, anger, loss of sense of personal efficacy, loss of

7    capacity to enjoy life, loss of self-esteem, and economic damages.

8        WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer,

9    Kindschi, Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

10                          **FOURTH CAUSE OF ACTION**
11       VIOLATION OF FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
                      (Due Process And Equal Protection Clauses)
12                    (Against All Defendants Except Chao and EDD)

13       142.   Plaintiff incorporates by reference the allegations in Paragraphs 1-142, above.

14       143.   Plaintiff has a clearly established right under the Fourteenth Amendment to the U.S.

15   Constitution not to be deprived of his constitutionally protected property interests, due process

16   of law and equal protection under the law; and, a clearly established right under the Act not to be

17   discriminated against or obstructed from seeking, applying for, and receiving any right to TAA.

18       144.   During the January 18, 2006 appeal hearing, plaintiff realized that defendants

19   independently and collectively intended to violate his rights and have continued to violate them

20   since that date making it difficult for plaintiff to obtain the benefits to which he was entitled.

21       145.   As s result of defendants' unlawful and malicious conducts plaintiff is and has been

22   deprived of his rights to due process of law, equal protection under the law[12] and property

23   interests, and the due course of justice was impeded and denied in violation of the Act and the

24   _____

25   [12] "The Equal Protection Clause ensures that 'all persons similarly situated should be treated
     alike.' [] The equal protection guarantee protects not only groups, but individuals who would
26   constitute a 'class of one.' [] Where, [] state action does not implicate a fundamental right or a
     suspect classification, the plaintiff can establish a 'class of one' equal protection claim by
27   demonstrating that it 'has been intentionally treated differently from others similarly situated and
     that there is no rational basis for the difference in treatment.' [] Where an equal protection claim
28   is based on 'selective enforcement of valid laws,' a plaintiff can show that the defendants'
     rational basis for selectively enforcing the law is a pretext for 'an impermissible motive.' []."
     *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (2004) (internal citation omitted).

COMPLAINT                                    34

Fourteenth Amendment to the U.S. Constitution.

146.  At all times relevant herein, the defendants were state actors and their conduct was subject to the provisions of the Fourteenth Amendment to the U.S. Constitution.

147.  Defendants' conduct was outside their scope of authority.

148.  Because of defendants' deliberate indifference to and violations of plaintiff's rights, plaintiff was harmed, has incurred considerable expenses and loss of time which would not otherwise have been incurred, has been unable to receive his TAA benefits, and has suffered the loss of confidence in the administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity, embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of self-esteem, and economic damages.

WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer, Kindschi, Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

### FIFTH CAUSE OF ACTION
VIOLATION OF 42 U.S.C. § 1983 (Deprivation of Rights)
(Against All Defendants Except Chao and EDD)

149.  Plaintiff incorporates by reference the allegations in Paragraphs 1-148, above.

150.  Plaintiff has a clearly established right under 42 U.S.C. § 1983 not to be deprived of any rights secured by the Constitution (due process, equal protection, property interest) and laws.

151.  At all times relevant herein, the defendants were state actors and their conduct was subject to 42 U.S.C. § 1983. Defendants' conduct was outside their scope of authority.

152.  During the January 18, 2006 appeal hearing, plaintiff realized that defendants, acting under the color of law, intended to deprive plaintiff of these rights and have continued to deny plaintiff's rights secured by the U.S. Constitution and the Act, to wit, they discriminated against plaintiff and obstructed him from seeking, applying for, and receiving any right to TAA.

153.  As a result of defendants' unlawful[13] and malicious conducts, plaintiff is and has been

---

[13] "Whoever directly or indirectly deprives, attempts to deprive, or threatens to deprive any person of any employment, position, work, compensation, or other benefit provided for or made possible in whole or in part by any Act of Congress appropriating funds for work relief or relief purposes, on account of political affiliation, race, color, sex, religion, or national origin, shall be fined under this title, or imprisoned not more than one year, or both." 18 U.S.C. § 246.

1    deprived of his rights to due process of law, equal protection under the law and property interest,

2    in violation of the Act and 42 U.S.C. § 1983.

3    154.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

4    incurred considerable expenses and loss of time which would not otherwise have been incurred,

5    has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

6    administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

7    embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

8    self-esteem, and economic damages.

9    WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer,

10    Kindschi, Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

11    **SIXTH CAUSE OF ACTION**
VIOLATION OF 42 U.S.C. § 1985(3) (Conspiracy To Interfere With Civil Rights)

12    (Against All Defendants Except Chao, EDD and Bronow)

13    155.  Plaintiff incorporates by reference the allegations in Paragraphs 1-154, above.

14    156.  Plaintiff has a clearly established right under 42 U.S.C. § 1985(3) not to be deprived of

15    equal protection under the law.

16    157.  At all times relevant herein, the defendants were state actors and their conduct was

17    subject to 42 U.S.C. § 1985(3). Their conduct was outside their scope of authority.

18    158.  During the January 18, 2006 appeal hearing, plaintiff realized that defendants, acting

19    under the color of law, intended to violate these rights and have continued to deny plaintiff's

20    rights secured by the U.S. Constitution and the Act, to wit, they discriminated against plaintiff

21    and obstructed him when seeking, applying for, and receiving any right to TAA.

22    159.  As a result of defendants' unlawful and malicious conducts, plaintiff is and has been

23    deprived of his rights to due process of law, equal protection under the law and property interest,

24    in violation of the Act and 42 U.S.C. § 1985(3).

25    160.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

26    incurred considerable expenses and loss of time which would not otherwise have been incurred,

27    has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

28    administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

1  embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

2  self-esteem, and economic damages.

3      WHEREFORE, plaintiff prays for damages against defendants Smith, Boomer, Kindschi,

4  Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

5                    **SEVENTH CAUSE OF ACTION**
                       CIVIL CONSPIRACY
6          (Against All Defendants Except Chao, EDD, Bronow, and Gee)

7      161.  Plaintiff incorporates by reference the allegations in Paragraphs 1-160, above.

8      162.  On March 2, 2007, when defendant Boomer denied plaintiff all benefits under the Act,

9  plaintiff realized that defendants have conspired to deprive of his of his rights under the U.S.

10  Constitution and the Act.

11     163.  All the Defendants (a) had an object to be accomplished; (b) had an agreement on the

12  object or course of action, to wit, to deprive plaintiff of his rights to the due process, equal

13  protection of the laws and property interests; (c) performed one or more unlawful overt acts; and

14  (d) caused plaintiff damages that were a direct result of those acts.

15     164.  In furtherance of their object, defendants did two or more overt acts against the

16  plaintiff. Those unlawful overt acts included the facts outlined in the Sixth Cause of Action,

17  above, conspiracy under section 1985(3).

18     165.  Defendants are liable for their unlawful[14] acts. Their conduct was outside their scope of

19  authority.

20     166.  Plaintiff suffered harm and damages, as stated at par. 160, above, as a direct result.

21     WHEREFORE, plaintiff prays for damages against defendants Smith, Boomer, Crawley,

22  Campbell, Kindschi and Does 1-10, and each of them, as set forth below.

23                    **EIGTH CAUSE OF ACTION**
              VIOLATION OF 42 U.S.C. § 1986 (Neglect To Prevent)
24             (Against All Defendants Except Chao, Crawley, and Gee)

25     167.  Plaintiff incorporates by reference the allegations in Paragraphs 1-166, above.

26     168.  Plaintiff has a clearly established right under 42 U.S.C. § 1986 not to be deprived of

27

28

---

[14] Conspiracy, Cal. Penal Code § 182(3)-(5).

COMPLAINT                          37

1  equal protection under the law.

2      169.  At all times relevant herein, the defendants were state actors and their conduct was

3  subject to 42 U.S.C. § 1986.

4      170.  Starting from January 18, 2006 appeal hearing, defendants had knowledge the wrongs

5  outlined in paragraph 156-158, above, conspired to be done are about to be committed, and

6  having had power to prevent or aid in preventing the commission of the same, neglected or

7  refused so to do and such wrongful act were committed.

8      171.  Defendants' conduct was outside their scope of authority.

9      172.  As a result of defendants' failure to prevent the unlawful and malicious conducts from

10 being committed, plaintiff is and has been deprived of his rights to due process of law, equal

11 protection under the law and property interest, in violation of the Act and 42 U.S.C. § 1985(3).

12     173.  Because of defendants' neglect to prevent violations of plaintiff's rights, plaintiff was

13 harmed, has incurred considerable expenses and loss of time which would not otherwise have

14 been incurred, has been unable to receive his TAA benefits, and has suffered the loss of

15 confidence in the administrative process, the feelings of betrayal by defendant EDD and its

16 agents, loss of dignity, embarrassment, anger, loss of sense of personal efficacy, and loss of

17 capacity to enjoy life, loss of self-esteem, and economic damages.

18     WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer,

19 Kindschi, Campbell, and Does 1-10, and each of them, as set forth below.

20                          **NINTH CAUSE OF ACTION**
         VIOLATION OF 42 U.S.C. § 2000d (Exclusion From Federally Funded Programs)
21                       (Against All Defendants Except Chao)

22     174.  Plaintiff incorporates by reference the allegations in Paragraphs 1-173, above.

23     175.  Defendant EDD receives federal funding to administer the Act benefit programs and to

24 provide financial assistance to displaced workers as the ultimate beneficiaries of the federal

25 funds.

26     176.  "[N]o person in the United States shall, on the ground of race, color, or national origin,

27 be excluded from participation in, be denied the benefits of, or be subjected to discrimination

28 under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

COMPLAINT                              38

1   177.  Plaintiff believes that the state defendants denied him benefits based on his race and/or

2   national origin.

3   178.  Plaintiff has been denied benefits under the Act in violation of Title VI.

4   179.  Defendants' conduct was outside their scope of authority.

5   180.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

6   incurred considerable expenses and loss of time which would not otherwise have been incurred,

7   has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

8   administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

9   embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

10  self-esteem, and economic damages.

11   WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer,

12  Kindschi, Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

13                              **TENTH CAUSE OF ACTION**
                            FRAUD BY OMISSION OR NONDISCLOSURE
14                        (Against Defendant Crawley, Campbell and Does 1-10)

15   181.  Plaintiff incorporates by reference the allegations in Paragraphs 1-180, above.

16   182.  Particularity requirement:

17       a.    Plaintiff's Basic TRA was the same as his weekly unemployment insurance,

18  $330.00 per week. EDD determined that, according to the law regarding unemployment

19  extensions, plaintiff having been employed for three weeks during January-February 2005, his

20  Additional TRA will be reduced to approximately $106.00 per week;

21       a.    Such representations were false when made;

22       b.    Defendant Campbell informed plaintiff of this EDD's decision to decrease

23  plaintiff's Additional TRA during a telephone conversation at 8:21 a.m., on August 30, 2007.

24  During the said conversation, defendant Campbell stated that he and defendant Crawley

25  discussed this matter, approximately, between August 21 and 30, 2007. This latter fact lies

26  within the exclusive control of defendants Crawley and Campbell.

27       c.    Such representation made by defendants Crawley and Campbell was an intentional

28  perversion of truth and a false misrepresentation of a matter of fact. It was fraudulent because the

---

1    law states that the Additional TRA is the same as the Basic TRA. 20 C.F.R. § 615.6

2        d.    This conduct of defendants Crawley and Campbell was intended to induce plaintiff

3    to part with the total TRA benefit to which he was entitled and to surrender a legal right to the

4    same, causing plaintiff to lose $17,472.00 and reduce EDD's liability by the same amount.

5        e.    All statutory and regulatory conditions that plaintiff had to meet had occurred.

6    That is, plaintiff had been found eligible for the benefits and had gone through the procedures

7    established by EDD and USDOL to qualify for the benefits.

8        183.  On August 6, 2002, defendant Crawley denied plaintiff TAA benefits due to his

9    employment separation not having been certified as adversely affected by USDOL. However,

10   defendant Crawley without such certification found plaintiff's February 2005 employment

11   separation to be eligible for TAA.

12       184.  EDD's TAA pamphlet, DE 8392 r4, p.2, clearly states that "TRA weekly amount stays

13   the same throughout the life of the claim. The benefit period may change if there are later TRA-

14   qualifying separations."

15       185.  Defendants' conduct was outside their scope of authority.

16       186.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

17   incurred considerable expenses and loss of time which would not otherwise have been incurred,

18   has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

19   administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

20   embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

21   self-esteem, and economic damages.

22       WHEREFORE, plaintiff prays for damages against defendants Crawley, Campbell, and

23   Does 1-10, and each of them, as set forth below.

24                          **ELEVENTH CAUSE OF ACTION**
                                 ABUSE OF PROCESS
25                   (Against All Defendants Except Chao, EDD and Bronow)

26       187.  Plaintiff incorporates by reference the allegations in Paragraphs 1-186, above.

27       188.  Defendants Gee denied plaintiff's training benefit twice notwithstanding the Board's

28   decision finding plaintiff's program to be approved. On appeal of the second denial, before the

---

1  completion of the hearing, defendants realized that they would not prevail and as a result they

2  decided to withdraw the denial and forced the administrative processes to end. Defendants did

3  not follow through with the promise, which was basis ALJ dismissed the appeal. Plaintiff was

4  forced to reinstate the administrative proceedings once again in order to get the relief that he

5  would have gotten had the defendants not moved to dismiss the appeal.

6  189.  Defendants would deliberately notice only one issue for each appeal even though

7  multiple issues were affecting plaintiff's statutory rights.

8  190.  Defendants have narrowly construed the "Bona Fide Application" requirement of to

9  demand each application to be signed by the worker. Defendants have applied this interpretation

10  to deny plaintiff benefits simply because such application was not signed by plaintiff. Such

11  construction of the statute is in contravention of the Act's intent.

12  191.  Defendant Boomer denied plaintiff all benefits for which he had applied being fully

13  informed that the Board and SJOA has determined plaintiff to be eligible for those benefits.

14  192.  Defendants used a legal process in a wrongful manner, not proper in the regular

15  conduct of a proceeding, to accomplish a purpose for which it was not designed; defendants

16  acted with an ulterior motive; willful acts were committed by defendants not authorized by the

17  process and not proper in the regular conduct of the proceeding; plaintiff suffered damage, loss

18  and harm; and Such damage, loss or harm was the legal result of such use of legal process.

19  193.  Defendants through the unlawful use of the statutes and regulations have delayed

20  providing plaintiff the benefits to which he was entitled and by their inaction have caused

21  plaintiff to suffer financially and emotionally.

22  194.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

23  incurred considerable expenses and loss of time which would not otherwise have been incurred,

24  has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

25  administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

26  embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

27  self-esteem, and economic damages.

28  WHEREFORE, plaintiff prays for damages against defendants Smith, Boomer, Kindschi,

1  Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

2  **TWELVTH CAUSE OF ACTION**
SLANDER
3  (Against Defendant Crawley)

4  195.  Plaintiff incorporates by reference the allegations in Paragraphs 1-194, above.

5  196.  On October 25, 2006, at an appeal hearing in SJOA, defendant Crawley falsely,

6  maliciously and wantonly imputed to plaintiff a want of honesty, by then and there, in the

7  presence and hearing of ALJ Sure, falsely, maliciously, and wantonly say of and concerning

8  plaintiff that plaintiff's applications for benefits under the Act were nothing but a "mad grab for

9  money" from EDD, meaning thereby and intending to convey the impression upon the mind of,

10  and being so understood by, ALJ Sure, that plaintiff was deceitful and intent on defrauding EDD

11  and the Federal Government.

12  197.  Defendant Crawley's defamatory statement had no logical relation to the proceedings

13  and did not function as a necessary or useful step in the proceeding because the issue under

14  review was benefit determination not overpayment, deceit, or fraud.

15  198.  The offenses which plaintiff was falsely asserted to have committed were Fraudulent

16  Claim (Cal. Penal C. § 72), a felony/misdemeanor punishable by fine of $1,000-$10,000 and/or

17  imprisonment in county jail or state prison for a period of one year; Perjury (Cal. Penal C. §

18  118), a felony punishable by imprisonment in state prison for a period of 2-4 years; Conspiracy

19  to defraud the Government with respect to claims (18 U.S.C. § 286), a felony punishable by fine

20  and/or imprisonment for a period of ten years; and, Perjury (18 U.S.C. § 121), a felony

21  punishable by fine and/or imprisonment for a period of five years.

22  199.  On March 2, 2007, only after defendant Boomer denied plaintiff TAA benefits,

23  notwithstanding all the decisions by the ALJ and the Board finding plaintiff eligible for such

24  benefits, plaintiff discovered that defendant Crawley, by way of making the same false and

25  defamatory statement, had induced defendants Boomer and Smith to get involved with the case,

26  which further deprived plaintiff of his rights and obtaining benefits.

27  200.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

28  incurred considerable expenses and loss of time which would not otherwise have been incurred,

1  has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

2  administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

3  embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

4  self-esteem, and economic damages.

5      WHEREFORE, plaintiff prays for damages against defendant Crawley as set forth below.

6                          **THIRTEENTH CAUSE OF ACTION**
                    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
7                          (Against All Defendants Except Chao)

8      201.  Plaintiff incorporates by reference the allegations in Paragraphs 1-200, above.

9      202.  Defendants engaged in negligent conduct or a willful violations of a constitutional and

10  statutory standards;

11     203.  Plaintiff suffered serious emotional distress;

12     204.  Defendants' negligent conduct or willful violations of constitutional and statutory

13  standards were a cause of plaintiff's serious emotional distress.

14     205.  Serious emotional distress is an emotional reaction which is not an abnormal response

15  to the circumstances. It is found where a reasonable person would be unable to cope with the

16  mental distress caused by the circumstances.

17     206.  The underlying concept is that one has a legal duty to use reasonable care to avoid

18  causing emotional distress to another individual. If one fails in this duty and unreasonably causes

19  emotional distress to another person, that actor will be liable for monetary damages to the

20  injured individual. The tort is to be contrasted with intentional infliction of emotional distress in

21  that there is no need to prove intent to inflict distress. That is, an accidental infliction, if

22  negligent, is sufficient to support a claim.

23     207.  Because of defendants' violations of plaintiff's rights, plaintiff was harmed, has

24  incurred considerable expenses and loss of time which would not otherwise have been incurred,

25  has been unable to receive his TAA benefits, and has suffered the loss of confidence in the

26  administrative process, the feelings of betrayal by defendant EDD and its agents, loss of dignity,

27  embarrassment, anger, loss of sense of personal efficacy, loss of capacity to enjoy life, loss of

28  self-esteem, and economic damages.

COMPLAINT                                    43

1    WHEREFORE, plaintiff prays for damages against defendants Bronow, Smith, Boomer,

2    Kindschi, Crawley, Gee, Campbell, and Does 1-10, and each of them, as set forth below.

3    **FOURTEENTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

4    (Against All Defendants Except Chao, Bronow and Campbell)

5    208.  Plaintiff incorporates by reference the allegations in Paragraphs 1-207, above.

6    209.  Defendants' deliberate indifference to plaintiff's rights and their conducts in repeatedly

7    and unlawfully denying plaintiff's benefits, while being fully aware of the law and the facts and

8    having been told by the ALJs of their improper conduct, have been extreme and outrageous.

9    210.  Defendants had intended to cause plaintiff to suffer extreme emotional distress, or must

10    have known that such distress was substantially likely to result.

11    211.  Plaintiff suffered severe and extreme emotional distress.

12    212.  Defendants' conducts caused plaintiff's distress, loss of dignity, embarrassment, anger,

13    loss of sense of personal efficacy, loss of capacity to enjoy life, and loss of self-esteem.

14    WHEREFORE, plaintiff prays for damages against defendants Smith, Boomer, Kindschi,

15    Crawley, Gee, and Does 1-10, and each of them, as set forth below.

16

17    **INJUNCTIVE RELIEF**
(Against All Defendants)

18    213.  Plaintiff incorporates by reference the allegations in Paragraphs 1-212, above

19    214.  Plaintiff cannot adequately press and adjudicate his claims of unconstitutional

20    deprivation in a way other than this lawsuit, and he has no means other than this lawsuit to

21    effectuate the policy considerations of Civil Rights Act, the U.S. Constitutions, or of the Trade

22    Act itself.

23    215.  Defendants operate a system, which unlawfully and in contravention of the Act denies

24    workers training and financial assistance benefits.

25    216.  EDD by policy does not record any interview conducted with the worker. As a result,

26    plaintiff has been unable to establish the fact that he had requested for multiple benefits and

27    EDD has only denied one. Furthermore, as a result of this policy, plaintiff has been unable to

28    present evidence of EDD employees' abusive behavior.

217.  The Secretary interprets the 26-week Additional TRA provided for in 19 U.S.C. § 2293(g) to pertain only to remedial education. Such construction is inconsistent with the Legislature's intent and purpose as expressed by the statute's plain language, which establishes this Subsection's Additional TRA to be used "to complete training approved for the worker under section 2296 of this title *which includes* a program of remedial education (as described in section 2296 (a)(5)(D) of this title)...." *Id.* (Emphasis added.) This deprives plaintiff and other workers similarly situated of benefits without due process.

218.  The Secretary interprets "Bona Fide" application to be "an individual's signed and dated application for training filed with the State agency administering the TAA training program, on a form necessarily containing the individual's name, petition number, local office number, and specific occupational training. This form shall be signed and dated by a State agency representative upon receipt." 20 C.F.R. § 617.3(i). EDD, inconsistent with the liberal construction provision of Part 617, has strictly construed this definition to require each worker to sign the application. However, such interpretation has led to a policy that EDD, in contravention of the Act and Part 617, has relied upon to unlawfully deny plaintiff his benefits simply because plaintiff had not signed the application.

219.  The Secretary has prescribed that any determination has to be writing and notify the worker of the issues. However, EDD by policy only notices one issue at a time on appeal, even if there are multiple issues and determinations. This policy is in contravention of the Secretary's regulations, where prompt appeal is required.

220.  Plaintiff has been subjected to state defendants' unlawful practices and has suffered immediate harm as a result.

221.  CUIAB, in its several decisions, found that state defendants repeatedly engaged in injurious acts in the past, which shows a sufficient likelihood that defendants are continuing to engage in them and/or will engage in them in the near future.

222.  Because of the continuing nature of state defendants' deliberated indifference to workers' rights and their unlawful policies and USDOL's failure to ensure state defendants' full compliance to the Act, plaintiff, and similarly situated workers, have been, are, and will continue

1 | to be deprived of their rights and benefits in violation of the Act and the Constitution, resulting

2 | in immediate and irreparable harm.

3 |    223. Plaintiff, and other workers similarly situated, continue to suffer injury because plaintiff

4 | and those similarly situated will have to go through multiple administrative appeals and the

5 | courts in order to get their benefits.

6 |    224. Plaintiff has been unconstitutionally denied Trade Act benefits in the past and will be

7 | denied benefits in the future unless the Court grants the relief sought in this suit.

8 |    225. State defendants' unlawful practice, which has created an unfair process, is capable of

9 | repetition, yet evading review, and as such must be enjoined. State defendants should be

10 | restrained from administering the Act and USDOL should be enjoined from further making

11 | payments to the State of California for administering the Act until such time that defendant Chao

12 | is satisfied that state defendants fully comply with the Act and demonstrate to defendant Chao

13 | that their form of administration of program is reasonably calculated to ensure full payment of

14 | unemployment compensation when due.

15 |    226. Injunctive relief on behalf of plaintiff in this court is the only practical, justiciable

16 | manner in which training and financial assistance applicants can redress the denial of the TAA

17 | benefits to which they are entitled under the Trade Act. Plaintiff is entitled to a permanent order.

### IX.  PRAYER

19 | WHEREFORE, plaintiff demands Judgment, as follows:

20 | As against defendant James Crawley:

21 |     a.   Special damages (lost time, debts incurred) in an amount that is yet to be

22 | ascertained.

23 |     b.   General damages in the amount of $250,000.00; and

24 |     c.   Exemplary damages in the amount of $500,000.00;

25 | As against defendant Bronow:

26 |     a.   General damages in the amount of $50,000.00; and

27 |     b.   Exemplary damages in the amount of $100,000.00;

28 | As against defendant Smith:

c.    General damages in the amount of $50,000.00; and

d.    Exemplary damages in the amount of $250,000.00;

As against defendant Boomer:

a.    General damages in the amount of $50,000.00; and

b.    Exemplary damages in the amount of $250,000.00;

As against defendant Pauline Gee:

a.    General damages in the amount of $100,000.00; and

b.    Exemplary damages in the amount of $250,000.00;

As against defendant Tom Campbell:

a.    General damages in the amount of $50,000.00; and

b.    Exemplary damages in the amount of $50,000.00;

As against defendant EDD:

a.    General damages in the amount of $100,000.00;

b.    Exemplary damages in the amount of $250,000.00;

c.    Prejudgment interest on TRA and TAA benefits; and

d.    Cost of Suit;

As against defendant USDOL:

e.    For temporary, preliminary and permanent injunctive relief enjoining defendant Chao from allowing state defendants to continue processing workers' Trade Act applications as they has and requiring defendant Chao to review state defendants' compliance to the Act; and

f.    Issue an injunctive order requiring state defendants to comply with the Act by performing their duties and complying with the CUIAB's decisions.

DATED this 11TH day of December, 2007.

*Reza Nagahi*

REZA NAGAHI
Plaintiff, Pro Se
840 Park Drive, Apt. C
Mountain View, CA 94040

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial, as provided by Rule 38(a) of the Federal Rules of Civil Procedure, on issues presented herein.

*[signature: Reza Nagahi]*

REZA NAGAHI
Plaintiff, Pro Se

## VERIFICATION

I, Reza Nagahi, am the plaintiff in the above entitled action. I have read the foregoing complaint. The facts stated therein are within my knowledge and are true and correct, except those matters stated on information and belief, and, as to those, I believe them to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of December, 2007, at Mountain View, California.

*[signature: Reza Nagahi]*

REZA NAGAHI
Plaintiff, Pro Se