1  REZA NAGAHI
   840 Park Drive, Apt. C
2  Mountain View, CA 94040
   (650) 965-1939
3  nagahi@hotmail.com

4  Plaintiff, Pro Se

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11 **REZA NAGAHI**,                    Case No.: **C07-06268-PVT**

12                     Plaintiff,      **MEMORANDUM OF POINST AND
                                       AUTORITIES IN SUPPORT OF
13       vs.                           OPPOSITION TO STATE
                                       DEFENDANTS' MOTION TO SET
14 **CALIFORNIA EMPLOYMENT            ASIDE ENTRY OF DEFAULT**
   DEVELOPMENT DEPARTMENT, ET AL.,**
15                     Defendants.

16                                     Hearing:    April 1, 2008
                                       Time:       10:00 a.m.
17                                     Courtroom:  5
                                       Judge:      Hon. Patricia V. Trumbull
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
<u>Page</u>

3
**TABLE OF AUTHORITIES** ...................................................................................ii

4
**INTRODUCTION** ...........................................................................................1

5
**STATEMENT OF ISSUE** ...................................................................................2

6
**STATEMENT OF FACTS** ...................................................................................2

7
**ARGUMENT** .................................................................................................5

8
　　I.  ENTRY OF DEFAULT SHOULD BE SUSTAINED ....................................................5

9
　　　　A.  The Moving Defendants' Culpable Conduct Led To The Default ..........................5

10
　　　　B.  The Moving Defendants' Defense Lacks Merit .....................................11

11
　　　　C.  Setting Aside The Default Will Substantially Prejudice Plaintiff ........................16

12
**CONSLUSION** ..............................................................................................16

13
**CERTIFICATE OF SERVICE** .............................................................................17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Alexander v. Sandoval,*
   532 U.S. 275, 279 (2001) ............................................................... 16

*California Dept. of Human Resources Development v. Java,*
   402 U.S. 121 (1971) ....................................................................... 16

*Chilicky v. Schweiker,*
   796 F.2d 1131, 1135 (9th Cir. 1986) ............................................ 14

*Demery v. Kupperman,*
   735 F.2d 1139, 1145-46 (9th Cir. 1984) ...................................... 12

*Franchise Holding II, LLC v. Huntington Rest.'s Group, Inc.,*
   375 F.3d 922, 926 (9th Cir. 2004) ......................... 1, 5, 8, 9, 11

*Griffith v. Breckenridge,*
   403 U.S. 88, 102 (1971) ................................................................ 15

*Hafer v. Melo,*
   502 U.S. 21, 31 (1991) .................................................................. 12

*International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock,*
   477 U.S. 274 (1986) ...................................................................... 12

*Kyle v. Campbell Soup Co.,*
   28 F.3d 928, 931-932 (9th Cir. 1994) ........................................ 11

*Pincay v. Andrews,*
   389 F.3d 853, 859 (9th Cir. 2004) ................................................ 7

*Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,*
   507 U.S. 380, 395 (1993) .............................................................. 11

*Saint Francis College v. Al-Khazraji,*
   481 U.S. 604, 611-13 (1987) ........................................................ 15

*Singh v. Gonzales,*
   491 F.3d 1019, 1024 (9th Cir. 2007) .......................................... 11

*United Brotherhood of Carpenters and Joiners of America v. Scott,*
   463 U.S. 825, 828-29 (1983) ........................................................ 15

*West v. Atkins,*
   487 U.S. 42, 49, (1988) ................................................................. 14

**Constitutional Provisions**

**Fifth Amendment** ........................................................................... 13
**First Amendment** .......................................................................... 13
**Fourteenth Amendment** ............................................................... 13

**Statutes**

**42 U.S.C § 1983** ............................................................................ 13
**42 U.S.C § 1985** ..................................................................... 13, 14
**42 U.S.C § 1986** ..................................................................... 13, 15

**42 U.S.C § 2000d**...................................................................................................... 13

42 U.S.C. § 503(a)(1) ................................................................................................. 14

**5 U.S.C. § 701** ........................................................................................................... 16

**5 U.S.C. § 706** ........................................................................................................... 16

## <u>Rules</u>

Civil L.R. 6-1(b) ......................................................................................................... 10

FRCivP 6(b)(1) ........................................................................................................... 10

FRCivP. 12(a)(1) ...................................................................................................... 6, 9

FRCivP. 12(a)(1)(A) ................................................................................................... 11

FRCivP. 12(a)(1)(A)(i) ................................................................................................. 6

FRCivP. 12(a)(1)(A)(ii) ................................................................................................ 7

FRCivP. 12(a)(2) .......................................................................................................... 7

FRCivP. 12(a)(3) .......................................................................................................... 7

FRCivP. 4(b) ............................................................................................................... 10

FRCivP. 4(d)(1) ............................................................................................................ 4

FRCivP. 55(c) ............................................................................................................... 5

FRCivP. 60(b) ............................................................................................................... 5

## <u>Regulations</u>

20 C.F.R. § 617.50...................................................................................................... 14

20 C.F.R. § 617.52...................................................................................................... 14

20 C.F.R. § 617.56...................................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  REZA NAGAHI
2  840 Park Drive, Apt. C
   Mountain View, CA 94040
3  (650) 965-1939
   nagahi@hotmail.com
4  Plaintiff, Pro Se

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN JOSE DIVISION**

11  **REZA NAGAHI**,                    Case No.: **C07-06268-PVT**

12                      Plaintiff,      **MEMORANDUM OF POINST AND**
13      vs.                            **AUTORITIES IN SUPPORT OF**
                                        **OPPOSITION TO STATE**
14  **CALIFORNIA EMPLOYMENT**           **DEFENDANTS' MOTION TO SET**
    **DEVELOPMENT DEPARTMENT, ET AL.,** **ASIDE ENTRY OF DEFAULT**
15                      Defendants.

16                                      Hearing:      April 1, 2008
17                                      Time:         10:00 a.m.
                                        Courtroom:    5
18                                      Judge:        Hon. Patricia V. Trumbull

19

20                      **INTRODUCTION**

21      In this Circuit, defendants Employment Development Department (EDD), Bronow, Smith,

22  Boomer, and Kindschi (collectively the "Moving Defendants") bore the burden of showing (1)

23  whether they engaged in culpable conduct that led to the entry of default; (2) whether they had a

24  meritorious defense; or (3) whether setting aside the entry of default judgment would prejudice

25  plaintiff.[1] The Moving Defendants assert that they have met all the foregoing requirements and,

26  as such, their motion to set aside entry of default should be granted because they have presented

27

28  _____
    [1] *Franchise Holding II, LLC v. Huntington Rest.'s Group, Inc*., 375 F.3d 922, 926 (9th Cir.
    2004).

1   "good cause" for relief. (Doc. 19-1, Memo. of Points and Auth., at 1:25-28).[2] They claim there

2   was no culpability on their part due to "excusable neglect." (Doc. 19, Notice of Motion to Set

3   Aside Entry of Default, at 2:2). They base this on not having attempted "to take advantage of

4   plaintiff or to manipulate the legal process" (Memo. of Points and Authorities, at 2:1-2 (Doc. 19-

5   1)), and that they actually had 60 days to respond because the summons provided that length of

6   time (*Id.*, at 2:6-8). Furthermore, they claim they have meritorious defenses to plaintiff's claims.

7   (*Id.*, at 2:2).

8        As set forth in detail below, the Moving Defendants provide no support for their

9   contentions, be it facts, evidence or legal authority. The legal authority they do offer, set only in

10  the Introduction section of their Memorandum of Points and Authority, does not support the

11  facts or the argument they attempt to make. To prove they have a meritorious defense they offer

12  a copy of their motion to dismiss as an exhibit, (Doc. 19-3), which offers only conclusory

13  statements that a dispute exists. A "mere general denial without facts to support it" is not enough

14  to justify vacating a default or default judgment. Moreover, they continue to attempt to

15  manipulate the legal system by deliberate falsehoods or reckless disregard for the truth, where

16  their alleged false or omitted information is material to the finding of lack of good cause and,

17  hence, denying their motion to set aside default.

18       The Moving Defendants deliberate actions led to the entry of default. Their defense to

19  plaintiff's claims is not meritorious. Consequently, granting their motion will place undue

20  burden on the judicial system; and, will prejudice plaintiff because, as in the administrative

21  proceedings, they will ultimately fail to prevail.

## STATEMENT OF ISSUE

23       Should the motion for relief from default be granted?

## STATEMENT OF FACTS

25  1.    December 14, 2007. A copy of the complaint, summons and the court-issued initial

26  documents were personally delivered and served on the California Attorney General Office

---

[2] The style of pinpoint citation to a document identifies the page number and the line number(s). E.g., 1:26-28 refers to the lines 26-28 of page 1 of the document.

1    located at 455 Golden Gate Avenue, Suite 11000, San Francisco, California. (Doc. 3)[3]. Ms.

2    Carolyn Wiley, Service Deputy at California Department of Justice, personally accepted the

3    service of the process and on the same day forwarded the summons and the complaint to Ms.

4    Susan M. Carson, Supervising Deputy Attorney General. (*Id.*, Cal. DOJ, Civil Service of

5    Process Sheet). Also, defendants EDD, Bronow, Smith and Boomer were served with the

6    complaint, summons and the court-issued initial documents. At the time of service, Ms. Barbara

7    S. Kaufman, Assistant Chief Counsel at EDD Legal Office, SBN 140593, accepted service on

8    behalf of defendant EDD and signed the Return of Service, Form AO440. (Doc. 3). However,

9    she indicated that she had to contact other state defendants to ensure they would authorize her to

10   accept service on their behalf. After contacting the remaining state defendants, Ms. Kaufman

11   stated that defendants Bronow and Smith had authorized her to accept service and signed the

12   Return of Service, Form AO440. (Doc. 3). Ms. Kaufman stated that defendant Boomer would

13   stop by the Legal Office to accept service personally, and that she was not authorized to accept

14   service on behalf of defendants Campbell, Crawley or Gee. Defendant Boomer personally

15   accepted service, crossed out the location of service to signify his personal acceptance of

16   process and signed the Return of Service, Form AO440. (Doc. 3); *See* Exhibit 1, Decl. of Araya

17   Silpikul.

18       2.    December 17, 2007. At 8:57 a.m. defendant Kindschi was personally served at EDD's

19   Sunnyvale Branch Office.[4] (Doc. 3); *See* Exhibit 1, Decl. of Araya Silpikul.

20       3.    January 2, 2008. At 1:45 p.m., Mr. Richard L. Stewart, Staff Counsel at EDD Legal

21   Office, SBN 214073, left a message for plaintiff stating that Mr. Holland will be representing

22   defendant EDD. The message included Mr. Holland's phone number. Plaintiff contacted Mr.

23   Holland at 4:47 p.m. Mr. Holland's outgoing message indicated that he would be back on

24   January 4, 2008.

25

26   _____

27   [3] The Clerk has list proof of service of complaint and summons as to EDD. However, plaintiff
     had filed the proofs of service of complaint and summons on defendants Bronow, Smith, Boomer
     and Kindschi on that day.

28   [4] The Moving Defendants have mistakenly indicated that defendant Kindschi was served on
     December 14, 2007.

OPPOSITION TO MOTION TO SET ASIDE ENTRY OF DEFAULT                                    3
Case No.: C07-06268-PVT

4.    January 7, 2008. At 12:19 p.m. plaintiff left Mr. Holland a voice message identifying himself as the plaintiff in this case and asked exactly whom Mr. Holland was representing.

5.    January 8, 2008. Mr. Holland returned plaintiff's phone call, leaving a voice message but not providing the information plaintiff had asked for.

6.    January 9, 2008. At 12:19 p.m. Plaintiff Left Another Message For Mr. Holland Asking Whom Exactly He Was Representing.

7.    January 10, 2008. After a few attempts, plaintiff was able to speak with Mr. Holland at 2:34 p.m. Mr. Holland was concerned about the response time to the complaint. Mr. Holland indicated that 60 days was for federal government and, as such, asked whether plaintiff was willing to stipulate to an extension of time for the Moving Defendants to respond. Plaintiff did commit. Mr. Holland stated that he would send the stipulation the next day. Plaintiff asked Mr. Holland if he was willing to accept service on behalf of the three unserved defendants, Campbell, Crawley and Gee. Plaintiff proposed this stating that it would cost thousands of dollars to serve those three defendants and reminded Mr. Holland that the Rules (i.e., FRCivP 4(d)(1)) state that it was the duty of an individual to prevent excessive cost of service. Mr. Holland indicated that he would communicate this with his clients and would get back to plaintiff on Monday, January 14, 2008.

8.    January 16, 2008. Plaintiff not having heard from Mr. Holland as previously agreed, served defendant Crawley. (Doc. 13). However, plaintiff failed to serve defendants Campbell and Gee on the same day. Plaintiff received Mr. Holland's stipulation.

9.    January 17, 2008. At 8:43 a.m. Mr. Holland left plaintiff a voice message that his client is unwilling to authorize him to accept service on behalf of the three unserved defendants. Mr. Holland suggested that plaintiff wait a while longer may be his client would change its mind.

10.   January 21, 2008. At 9:10 a.m. plaintiff left a voice message for Mr. Holland that he will be requesting the Clerk to enter a default against the Moving Defendants. Since plaintiff was working on that day, he was unaware that that day was a federal holiday.

11.   January 22, 2008. Plaintiff filed a request for entry of default against the Moving

1  Defendants. (Doc. 10 and 11).

2      12.  January 23, 2008. The Clerk entered a default against the Moving Defendants. (Doc.

3  12).

4      13.  February 4, 2008. The Moving Defendants appeared in the case and filed their motion

5  to set aside default. (Doc. 19).

6                                      **ARGUMENT**

7  **I.   ENTRY OF DEFAULT SHOULD BE SUSTAINED**

8      "The court may set aside an entry of default for good cause." FRCivP. 55(c). The "good

9  cause" standard that governs vacating an entry of default under Rule 55(c) is the same standard

10 that governs vacating a default judgment under Rule 60(b). *Franchise Holding II, LLC v.*

11 *Huntington Rest.'s Group, Inc*., 375 F.3d 922, 925 (9th Cir. 2004). The good cause analysis

12 considers three factors: (1) whether the defendants engaged in culpable conduct that led to the

13 default; (2) whether the defendants have a meritorious defense; or (3) whether reopening the

14 default judgment would prejudice plaintiff. As these factors are disjunctive, this Court is free to

15 deny the motion if any of the three factors was true. The Moving Defendants bear the burden of

16 showing that any of these factors favors setting aside the default. *Id*., at 925-926.

17 **A.   THE MOVING DEFENDANTS' CULPABLE CONDUCT LED TO THE DEFAULT**

18     All the defendants who were served, were properly served. This fact is not and cannot be

19 disputed by the Moving Defendants. Therefore, they bore the burden of showing "good cause" in

20 failing to timely respond to the summons. They attempted to accomplish this by asserting a few

21 reasons in their memorandum of points and authorities (MP&A) and Mr. Holland's declaration

22 ("Decl. of Holland"). Plaintiff responds to each assertion as set forth below.[5]

23     (1)  The 60-day time limit in the summons caused an uncertainty as to the response time.

24 (Doc. 19-1, MP&A, 2:6-8, 14-16, 21-23; 3:1-17-19, 24-27; Doc 19-2, Decl. of Holland, 2:4-6).

25 This argument fails because:

26

27 _____
[5] Since Mr. Holland is claiming ignorance and misconstruction of the unambiguous Rule 12 as
28 the reason for his failure to timely respond to the complaint, plaintiff will refer to Mr. Holland
("Counsel") throughout the section regarding culpable conduct.

A.  The FRCivP. 12(a)(1) provides: "Unless another time is specified by *this rule or a federal statute*, the time for serving a responsive pleading" is as follows: (A) A defendant *must* serve an answer: (i) within 20 days after the service of summons and complaint; …." FRCivP. 12(a)(1)(A)(i). (Emphasis added.) Counsel fails to cite the "federal statue" in support of his contention that a 60-day response would be proper for a state defendant. Instead, he blames the summons for creating an uncertainty for him. Based on that theory, therefore, one could assume that had the summons indicated a 120-day response, the Moving Defendants would have had that length of time to respond. That is, with a strike of a pen, suddenly a defendant's rights would be expanded. That cannot be.

B.  At least five attorneys were notified of this lawsuit shortly after its commencement. These included:

i.  Ms. Susan M. Carson, Supervising Deputy Attorney General, notified on December 14, 2007. (Doc. 3, Cal. DOJ, Civil Service of Process Sheet). She was admitted to the Bar in 1988. *See* Exhibit 2.

ii.  Mr. Charlton Holland, Deputy Attorney General, notified on or after December 22, 2007 through assignment of the case by Ms. Carson. (Doc 19-2, Decl. of Holland, ¶ 3). Mr. Holland was admitted to the Bar in 1965 and to practice before this Court. (Id., ¶ 1).

iii.  Ms. Barbara Kaufman, Assistant Chief Counsel at EDD Legal Office, who on December 14, 2007, accepted service on behalf of defendants EDD, Bronow, and Smith. (Doc. 3). She was admitted to the Bar in 1989, specializing in Labor and Employment. *See* Exhibit 3.

iv.  Mr. Richard Stewart, Staff Counsel at EDD Legal Office, who on January 2, 2008 notified plaintiff that Mr. Holland has been assigned to plaintiff's case. Mr. Stewart was admitted to the Bar in 2001 specializing in Worker's Compensation. *See* Exhibit 4.

v.  Ms. Sandra Hughes, General Counsel at EDD Legal Office, who plaintiff believes must have been notified of this lawsuit on or about December 16, 2007, due to the fact that defendant Bronow is also a member of the defendant EDD's Executive Staff. *See* Exhibit 5. Ms. Hughes was admitted to the Bar in 1979, specializing in Labor, Employment, and Public law. *See* Exhibit 6.

1    With, at least, five attorneys ranging from 7-43 years experience in the law, it is

2  unreasonable to assert that none were alarmed, able to research the law, or recall that only the

3  federal government, its agencies and employees are allowed 60 days to respond to a complaint.

4  FRCivP. 12(a)(2)-(3). This is especially shocking since most, if not all of these five attorneys

5  specialize in sections of the law that the federal laws are governing the issues.

6    Furthermore, all these attorneys knew that the service upon each of the Moving Defendants

7  was made personally and not through a waiver of service that would have given them 60 days to

8  respond. FRCivP. 12(a)(1)(A)(ii). "[A] lawyer's mistake of law in reading a rule of procedure is

9  not a compelling excuse. At the same time, however, a lawyer's mistake of fact, for example, in

10  thinking the government was a party to a case and that the 60-day rule applied for that reason,

11  would be no more compelling." *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004).

12    C.  Counsel admits to having been aware that a response might be due in a shorter

13  time. (Doc 19-2, Decl. of Holland, ¶ 3). However, Counsel decided to not even enter his

14  appearance in this matter or take one of the many options available to him to communicate with

15  this Court his intention to defend this case until 12 days after the entry of default. "[A] lawyer's

16  failure to read an applicable rule is one of the least compelling excuses that can be offered…."

17  *Pincay*, 389 F.3d at 859.

18    (2)  It took defendant EDD's legal staff eight (8) days to transmit the complaint and

19  summons to the Office of the Attorney General. (Ibid.) This argument fails because:

20    A.  Plaintiff had personally served the California Attorney General on December 14,

21  2007 and the Supervising Deputy Attorney General was notified of this case on the same day.

22  (Doc. 3, Cal. DOJ, Civil Service of Process Sheet). As such, the complaint and summons did not

23  have to be transmitted by the EDD legal staff to get to the office of the California Attorney

24  General, they were there eight days before that transmission. It is simply clear that no action was

25  taken on this case either by EDD's legal staff or the Cal. Attorney General.[6]

26

27

28  [6] In *Quansah v. Cal. Empl. Dev. Dep't*, 2003 U.S. App. LEXIS 25935 (9th Cir. Cal. 2003), Mr.
   Fred Carl Duscha, SBN 135239, an EDD's Department of Industrial Relations Attorney
   answered for EDD and successfully dismissed the case.

1     B.   Defendant EDD's legal team could have responded to the summons. Alternatively,

2     they could have asked this Court for an extension of time due to the fact that they were in the

3     process of transferring the case to the Cal. Attorney General's Office. However, they chose not

4     to take this option. "[D]ue to the high stakes involved, [the Moving Defendants'] failure to seek

5     an extension of time for filing a responsive pleading went to [their] 'culpable conduct.'"

6     *Franchise Holding II*, 375 F.3d at 926. (Emphasis original).

7     (3)   Counsel was on vacation from December 25 through January 7. (Doc 19-2, Decl. of

8     Holland, 2:9-10). It is an unpersuasive contention that a "supervising" attorney who assigns

9     cases to her subordinates would knowingly assign a case to an attorney that would be absent

10    during the critical initial stage of the litigation. All employees must notify their supervisors in

11    advance of going on vacation, especially if they would be absent for two weeks. Surely, then, the

12    supervising attorney must have known that Counsel would be on vacation during that critical

13    time. However, Counsel has not asserted that his supervisor had also been confused by the

14    summons' 60-day deadline, just to impress upon the Court that all those involved were uncertain

15    about the time to respond. "If a defendant 'has received actual or constructive notice of the filing

16    of the action and failed to answer,' its conduct is culpable." *Franchise Holding II*, 375 F.3d at

17    926. (Emphasis original.)

18    Furthermore, plaintiff telephoned Counsel at 4:47 p.m. on January 2, 2008 and Counsel's

19    outgoing message, prerecorded by Counsel, stated that he would be out of the office until

20    January 4, 2008.

21    (4)   The Moving Defendants intended to litigate the case (Doc. 19-1, MP&A, at 3:11) but

22    plaintiff was non-committal (*Id.*, at 3:2-3) and did not stipulate to an extension of time. This

23    assertion also fails because:

24          A.   As set forth above, neither the Moving Defendants' nor Counsel's conducts attest

25    to the claim that they had intended to litigate this case during the first 30 days after the

26    commencement of the action. To effectively communicate the intention to defend this case,

27    Counsel or EDD's legal staff could have contacted the Court in a myriad of legal manners. They

28    simply did not.

1      B.   Counsel states that he reasonably believed that plaintiff would accept stipulating

2  his request for an extension of time to respond to the complaint. (*Id.*, at 3:20-21). Yet, Counsel

3  states that plaintiff was non-committal (*Id.*, at 3:2-3; Decl. of Holland, at 2:18-19). Plaintiff

4  cannot understand how Counsel could form a reasonable belief on a non-committal response.

5  Plaintiff did not lull Counsel into inaction. Even if plaintiff was not cooperative, Counsel should

6  have proceeded with his intention to litigate the case, if there was such an intention. "[E]ven if

7  the parties did enter into a side-agreement, [the Moving Defendants] remain[] culpable for the

8  entry of default." *Franchise Holding II*, 375 F.3d at 926.

9      C.   To emphasize his prompt attempt to show his intention to litigate the case, Counsel

10  states that upon hearing that plaintiff was to request default entered against the Moving

11  Defendants, Counsel faxed plaintiff requesting that plaintiff not take that action on the grounds

12  that basically it was unfair and that *his clients would respond at the required date.* (Decl. of

13  Holland, at 2:22-24; emphasis added). This assertion goes to show that even up to the date that

14  plaintiff notified Counsel of his plan to file for an entry of default, Counsel was not planning on

15  filing a response until "the required date," which should have been January 3, 2008 and no later.

16  Clearly, Counsel, as he claims to be, was not confused by the time limit on the summons or the

17  requirement of Rule 12(a)(1).

18      D.   Counsel claims that he faxed plaintiff in an attempt to show his intention to litigate

19  the case and stop plaintiff from filing for entry of default. This is a deliberate falsehood. Plaintiff

20  never received a fax from Mr. Holland. In fact, plaintiff has never given his fax number to Mr.

21  Holland, the Moving Defendants, or posted it on any document filed with this Court. Moreover,

22  plaintiff's fax machine is set on manual. That is, plaintiff must be standing next to the machine,

23  listen for the tone, pick up the handset, press the Fax Start button and replace the handset in

24  order to receive a fax. On January 22, 2008, when Counsel claims that he sent this fax, (*Id.*, at

25  3:22-24; Doc. 19-1, MP&A, at 3:6-9), plaintiff was at work. *See* Exhibit 7. Therefore, it is

26  impossible that Counsel could have faxed plaintiff. In fact, he never did. Otherwise, it could

27  have been an exhibit attached to the motion to set aside default.

28      E.   The first conversation between plaintiff and Counsel occurred on January 10, 2008.

---

1   Plaintiff requested entry of default on January 22, 2008, 12 days after that conversation. And,

2   even if plaintiff was uncooperative, surely, Counsel could have requested leave of court pursuant

3   to FRCivP 6(b)(1) and/or Civil L.R. 6-1(b) to file late response during those 12 days, based on

4   "excusable neglect". However, Counsel neither choose to take that opportunity nor is he

5   claiming that he was uncertain about the foregoing Rules.

6       (5)  There is no indication that they attempted to take advantage of plaintiff or to

7   manipulate the legal process. (Doc. 19-1, MP&A, 2:1-2). Based on the foregoing, it is clear that

8   the Moving Defendants were and are trying to manipulate the legal process. To strive hard to

9   avoid being held accountable for and blaming others or various processes for one's failure is a

10  clear attempt to manipulate the legal process. Furthermore, by their inaction, they were and are

11  taking advantage of plaintiff.

12      (6)  Plaintiff's lack of knowledge of the proper response time for a state defendant. (Doc.

13  19-1, MP&A, 3:3; Doc 19-2, Decl. of Holland, at 2:18-19). Plaintiff's reasoning for listing all of

14  the defendants in this action on the same summons was based on FRCivP. 4(b) allowing it and

15  the assumption that all the state defendants could be served at EDD's Legal Office. Furthermore,

16  plaintiff relied on his research that stated: "Use of a single summons is recommended. … Use of

17  separate summons leads to confusion, and the possibility of serving a defendant with the wrong

18  summons." Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO.

19  BEFORE TRIAL § 5:56 (2007). Irrespective of plaintiff's reasoning, it is puzzling to see

20  Counsel assert a non-existent causal nexus between plaintiff's ignorance of the Rules and the

21  Moving Defendants' reliance on that ignorance to not timely respond to the summons.

22      (7)  Defendants Campbell and Gee have not been served. (Doc. 19-1, MP&A, 2:17-19).

23  Although, this fact would be pertinent at the time the Court is considering a request for default

24  judgment, it has no bearing at this point.

25      In summary, the Moving Defendants' Memorandum of Points and Authorities is almost

26  devoid of any legal authority that would support any of their contentions. In fact, the two cases

27  they cite stand for principles contrary to what the Moving Defendants would need to support

28  their position. They cite *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*,

507 U.S. 380, 395 (1993) for the proposition that their failure to timely respond to the complaint was "excusable neglect." (Doc. 19-1, MP&A, 1:28, 2:1). In *Pioneer*, the Supreme Court stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect…." *Id.*, at 392 (emphasis original).

Plaintiff has shown that the Moving Defendants' failure reflected: ignorance of rules of procedure, an easily manufactured excuse incapable of verification by the court, counsel's failure to provide for a readily foreseeable consequence, a complete lack of diligence, and prejudice to the plaintiff. In this case, Counsel has not presented a persuasive justification for his misconstruction of nonambiguous Rule 12(a)(1)(A), and his or EDD legal staff's failure to timely respond to the complaint. Accordingly, this Court should not deviate from the general rule that a mistake of law does not constitute excusable neglect. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931-932 (9th Cir. 1994). "To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith," finding the neglect excusable is an abuse of discretion. *Pioneer*, 507 U.S. at 388.

## B. THE MOVING DEFENDANTS' DEFENSE LACKS MERIT[7]

The Moving Defendants provide no facts or evidence in support of their defenses. Instead, they offer only conclusory statements that a dispute existed. A mere general denial without facts to support it is not enough to justify vacating a default or default judgment. *Franchise Holding II*, 375 F.3d at 926. The Moving Defendants' failure to produce relevant evidence within their control gives rise to an inference that the evidence was unfavorable. *Singh v. Gonzales*, 491 F.3d 1019, 1024 (9th Cir. 2007).

The Moving Defendants present four issues in their motion to dismiss. Plaintiff in turn will answer each.

1. **Are EDD and its employees, in their administration of TAA and in the employees' official capacity, protected by sovereign immunity and the Eleventh Amendment from damages in claims asserted under 42 U.S.C. § 1983?** (Doc 19-3, Exhibit A, 6:24-26).

---

[7] Plaintiff briefly discusses the Moving Defendants motion to dismiss only for the purpose of opposing their motion to set aside default. And, in case this Court sets aside the entry of default, plaintiff will oppose the state defendants' motion to dismiss once this Court grants leave for it to be filed.

1    Plaintiff brought this suit against the state defendants in both official and individual

2    capacities. Except as it relates to the first cause of action where defendants Bronow, Smith,

3    Boomer, Kindschi, Campbell, Crawley and Gee are sued in their official capacities, for the

4    remaining causes of action they are sued in their individual capacities. Damage actions under §

5    1983 are construed as individual capacity suits. *Demery v. Kupperman*, 735 F.2d 1139, 1145-46

6    (9th Cir. 1984), cert. denied, 469 U.S. 1127 (1985). And since the defendants are being sued in

7    their individual capacities, the 11th Amendment does not bar personal liability for these state

8    actors. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

9        2. **Does the plaintiff have a private right of action under TAA to challenge a
10           decision of EDD in administering TAA under its agreement with the Secretary of
             Labor?** (Doc 19-3, Exhibit A, 6:27-28).

11    The Moving Defendants' selectively disregard the state administrative record. As such,

12    plaintiff restates that he is not seeking a judicial review of defendant EDD's determination of his

13    benefits. In fact, the Administrative Law Judge (ALJ) Sure did review EDD's various denials of

14    plaintiff's benefits. After her fact findings and legal considerations, ALJ sure overturned those

15    denials and found plaintiff to be eligible and entitled to the Training and TRA benefits under the

16    Trade Act. Furthermore, the California Unemployment Insurance Appeals Board (CUIAB)

17    reviewed ALJ Sure's decision and affirmed. Therefore, plaintiff has no reason to want to appeal

18    or overturn decisions that have found him to be entitled to the very benefits that EDD had

19    delayed granting for four years.

20    The Supreme Court in *International Union, United Auto., Aerospace and Agric. Implement*

21    *Workers of Am. v. Brock*, 477 U.S. 274 (1986) stated that:

22        The Eleventh Amendment bar that precluded equitable relief in
          *Green*, however, has little in common with 19 U. S. C. § 2311(d).
23        The Trade Act provision does not foreclose review in federal court
          of every claim relating to the Act's application by federal and state
24        officials. While the Act vested state courts with exclusive
          jurisdiction over claims challenging a state agency's application of
25        federal guidelines to the benefit claims of individual employees,
          there is no indication that Congress intended § 2311(d) to deprive
26        federal district courts of subject-matter jurisdiction under 28
          U.S.C. § 1331(a) (1976 ed.) to hear statutory or constitutional
27        challenges to the federal guidelines themselves. Indeed, we have
          frequently upheld a contrary principle: that although review of
28        individual eligibility determinations in certain benefit programs
          may be confined by state and federal law to state administrative

OPPOSITION TO MOTION TO SET ASIDE ENTRY OF DEFAULT                    12
Case No.: C07-06268-PVT

and judicial processes, claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court. See *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471 (1977); *Fusari v. Steinberg*, 419 U.S. 379 (1975); *Christian v. New York State Dept. of Labor*, 414 U.S. 614 (1974); *California Dept. of Human Resources Development v. Java*, 402 U.S. 121 (1971); cf. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 678 (1986) (judicial review available for challenge to Secretary's regulations even where statute bars review of determinations of specific benefit amounts). In Christian, supra, for example, former employees denied unemployment compensation benefits in state proceedings brought an action in District Court alleging that the Secretary of Labor and the state agency acting as his agent had not adhered to the procedural guarantees of the Unemployment Compensation for Federal Employees Program. Even though the provision governing review of benefit determinations in that program, 5 US.C. § 8502(d), is nearly identical to 19 U.S.C. § 2311(d), we noted that the court had jurisdiction over plaintiffs' claims against both state and federal defendants. 414 U.S., at 617, n. 3.

As we find § 2311(d) to pose no bar to petitioners' claims, we see no jurisdictional impediment to this suit in federal court challenging a federal official's interpretation of a federal statute. In view of the extent to which state agencies are bound to adhere to the Secretary's directives with respect to the administration and interpretation of the Trade Act, see infra, at 292, such a direct challenge is not only proper, but appropriate.

*Id*. at 285. Plaintiff stated that the state defendants caused a substantial delay in giving his training benefits and are yet to pay the TRA weekly benefits, approximately $25,740.00. This was one of the many reasons that would support plaintiff's claims that the state defendants had violated his statutory and constitutional rights and that the state defendants are administering the Trade Act program in contravention of the federal law and Constitution. The foregoing is the basis for plaintiff's first cause of action—judicial review of U.S. Department of Labor and its cooperating state agency, EDD.

3. **Has the plaintiff, in any of his causes of action, set forth facts that support a cognizable denial by the sate defendants of a constitutional (First Amendment, Fifth Amendment or the Fourteenth Amendment) of federal statutory right (under the TAA) pursuant to 42 U.S.C §§ 1983, 1985, 1986, or 2000d, or any federal statutory right of the plaintiff under TAA?** (Doc 19-3, Exhibit A, 7:1-4).

As stated above, in this action, plaintiff is not pursuing the remaining claim in an effort to have his TRA benefits paid. Rather, plaintiff seeks damages for statutory and constitutional violations committed by the state defendant while plaintiff was proceeding through the claims

1  and appeals process, which were controlled under the state laws. Consequently, this damage

2  claims do not arise under the Trade Act. *Chilicky v. Schweiker*, 796 F.2d 1131, 1135 (9th Cir.

3  1986).

4        To state a valid claim for denial of access to the courts, a plaintiff must allege an actual

5  injury. *Barren v. Harrington*, 152 F.3d 1193, 1195 (9th Cir. 1998). Defendant Crawley's refusal

6  to issue a determination on plaintiff's application for remedial education benefit, was retaliatory

7  since plaintiff had been able to appeal and overturn his denials. Defendant Crawley's refusal

8  amounted to a violation of plaintiff's First Amendment right to seek redress.

9        "A person acts under color of state law, if he exercises power possessed by virtue of state

10  law and made possible only because the wrongdoer is clothed with the authority of state law."

11  *West v. Atkins*, 487 U.S. 42, 49, (1988) (internal quotations omitted). The Court said "it is firmly

12  established that a defendant in a § 1983 suit acts under color of state law when he abuses the

13  position given to him by the state. Thus generally, a public employee acts under color of state

14  law while acting in his official capacity or while exercising his responsibilities pursuant to state

15  law." *West*, 487 U.S. at 49-50 (emphasis added). State defendants were and are EDD employees.

16  Therefore, they are state actors.

17        State defendants' various violations of the law including 42 U.S.C. § 503(a)(1)) (When

18  Due), 20 C.F.R. § 617.50 (Prompt Determinations and Full Payments of Benefits), 20 C.F.R. §

19  617.52,. 20 C.F.R. § 617.56 (discrimination and obstruction in regard to seeking, applying for,

20  and receiving any right to TAA). These violations were among others that caused plaintiff

21  economical and emotional injuries. For example, due to the delay in receiving the training

22  benefits that plaintiff was found to be entitled to, plaintiff had to finance his educational

23  program, which the U.S. Department of Labor had been authorize by the Act to finance. Plaintiff

24  had to get loans to pay for his program and is paying interest on those loans. Had the training

25  benefits been paid timely by defendant EDD, as it had a duty to do under the Act, plaintiff would

26  not have incurred such an expense.

27        To bring a cause of action under 42 U.S.C. § 1985(3), plaintiff must allege and prove four

28  elements: (1) a conspiracy; (2) for the purpose of depriving him, either directly or indirectly, of

1   the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an

2   act in furtherance of this conspiracy; (4) whereby plaintiff is either injured in his person or

3   property or deprived of any right or privilege of a citizen of the United States. *United*

4   *Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983).

5   Further, the second of these four elements requires that in addition to identifying a legally

6   protected right, a plaintiff must demonstrate a deprivation of that right motivated by "some

7   racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

8   conspirators' action." *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971). Defendants Crawley,

9   Kindshi and Gee conspired to prevent plaintiff from receiving his training and TRA benefits.

10  Before the hearing on January 18, 2006 they consulted and decided to go ahead with an appeal

11  of their denial fully aware that the CUIAB had found plaintiff eligible for that benefit. However,

12  they withdrew they denial just to deprive plaintiff of his appeals right claiming that they would

13  grant relief, just to turn around and deny plaintiff the same benefit they promised to grant. Later

14  defendants Smith and Boomer joined this conspiracy. As stated above, plaintiff had to borrow

15  money to pay for his education and his cost of living during his educational program. And, he is

16  still to be paid his TRA benefits. Therefore, the conspiracy has not concluded.

17      Plaintiff is from Middle Eastern, born in Iran. Therefore, he belongs to a protected class.

18  *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987); *Amini v. Oberlin College*,

19  259 F.3d 493, 503 (6th Cir. Ohio, 2001) (Middle Eastern is considered a race for purposes of §

20  1981).

21      42 U.S.C. § 1986 predicates liability upon (1) knowledge that any of the conspiratorial

22  wrongs are about to be committed, (2) power to prevent or to aid in preventing the commission

23  of those wrongs, (3) neglect to do so, where (4) the wrongful acts were committed, and (5) the

24  wrongful acts could have been prevented by reasonable diligence. Plaintiff clearly showed that

25  defendants Crawley, Kindschi and Gee knew about the conspiracy, had power to prevent it but

26  did not. The same is true with defendants Bronow, Smith and Boomer. They knew that

27  defendant Crawley had.

28      "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief

1    and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). See above discriminatory

2    conduct by state defendants.

3        **4.** **Has the plaintiff stated a cause of action against the state defendants based upon the Administrative Procedure Act (5 U.S.C. §§ 701-706)?**

4

5        This is addressed in the answer to question 1, above.

6        **5.** **Has the plaintiff stated a cause of action against state defendants based upon slander or the negligent or intentional infliction of emotional distress?**

7

8        The complaint is sufficient as to these causes of action.

9        **C.** **SETTING ASIDE THE DEFAULT WILL SUBSTANTIALLY PREJUDICE PLAINTIFF**

10        The plaintiff and those other workers similarly situation must go through the same process

11    to obtain their benefits. In allowing the State Defendants to continue as they have without

12    holding them responsible for their violations of the law and constitution under the color of

13    authority would amount to allow the rule of law erode. No one is above the law, this the state

14    defendants must learn. Since the time of *California Dept. of Human Resources Development v.*

15    *Java*, 402 U.S. 121 (1971), the state defendants have not changed and continue to conduct

16    themselves as before.

17    **CONSLUSION**

18        Accordingly, this Court should sustain the entry of default and enter a default judgment

19    against the Moving Defendants.

20    DATED this **25th** day of February, 2008.

21              /s/ Reza Nagahi

22              Reza Nagahi, *Pro Se*

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Reza Nagahi, certify that on February 25, 2008, I electronically filed the foregoing *PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT, DECLARATION IN SUPPORT thereof, and PROPOSED ORDER* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e‑mail addresses denoted on the following Electronic Mail Notice List, and I hereby certify that there are no non‑CM/ECF participants which would require manual service of these papers.

DATED this **25th** day of February, 2008.

/s/ Reza Nagahi
Reza Nagahi, *Pro Se*

# E-FILING MAILING INFORMATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e‑mail notices for this case.

- CHARLTON G. HOLLAND, III, Counsel for State Defendants

  Charlton.Holland@doj.ca.gov

- CLAIRE T. CORMIER, Counsel for U.S. Department of Labor

  Claire.Cormier@usdoj.gov

- REZA NAGAHI, Plaintiff, Pro Se

  Nagahi@hotmail.com

**Manual Notice List**

No one requires manual noticing/service.