UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REZA NAGAHI,<br><br>            Plaintiff,<br><br>    v.<br><br>CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT, et al.,<br><br>            Defendants. | Case No.: C 07-6268 PVT<br><br>**ORDER: 1) GRANTING DEFENDANT SECRETARY OF LABOR'S MOTION TO DISMISS; 2) DENYING IN PART AND GRANTING IN PART STATE DEFENDANTS' MOTION TO DISMISS; AND 3) SETTING CASE MANAGEMENT CONFERENCE** |

## I.     INTRODUCTION

In this action, Plaintiff seeks various remedies for the Defendants' failure to pay him benefits under the Trade Act of 1974 (P.L. 93-618, as amended) and the Trade Act of 2002 (P.L. 107-210, as amended) (collectively the "Trade Act"). Defendants have all moved to dismiss Plaintiff's complaint. Because the court finds Plaintiff lacks standing to sue the Secretary of Labor, and it is clear that no amendment could cure this defect, dismissal of all of Plaintiff's claims against the Secretary with prejudice are warranted. Because, under the Eleventh Amendment, Defendant Employment Development Department ("EDD") is immune from suit in federal court, dismissal of Plaintiff's claims against EDD is warranted. EDD's officials are similarly immune from suits for money damages under Section 1983, and thus Plaintiff's claims against them in their official capacity for such damages must be dismissed. Dismissal of Plaintiff's second cause of action against

Defendants Bronow, Smith and Boomer only is warranted because, as discussed herein, there is no allegation that they *personally* violated Plaintiff's constitutional right to petition government. With regard to the remainder of Plaintiff's claims against the individual Defendants (collectively the "State Defendants"), dismissal is not warranted for the reasons discussed herein.

## II. BACKGROUND

### A. THE TRADE ACT

In passing the Trade Act,[1] Congress sought to "provide adequate procedures to safeguard American industry and Labor against unfair or injurious import competition, and to assist industries, firms, workers, and communities to adjust to changes in international trade flows." *See* 19 U.S.C. § 2102(4). Certain provisions in the Trade Act create a form of unemployment insurance for American workers who are certified by the Secretary of Labor ("Secretary") as having been adversely affected by international trade. *See* 19 U.S.C.A § 2273. Once a worker has been certified by the Secretary as being eligible for assistance, the worker is entitled to, among other things, up to 104 weeks of Trade Readjustment Allowances ("TRA"),[2] so long as the worker meets certain conditions. *See* 19 U.S.C. §§ 2291(a) & 2293(a)(2). In addition to this basic TRA, if no suitable employment is available for the worker and certain other criteria are met, the worker may be eligible for Trade Act-funded training ("Training Benefits"). *See* 19 U.S.C. § 2296. If that training continues past the initial period of basic TRA, the worker may apply for up to 52 weeks of "Additional TRA." *See* 19 U.S.C. § 2293(a)(3).

The program can either be implemented directly through the Secretary, 19 U.S.C. § 2312, or by a cooperating State that has entered into an agreement with the Secretary under 19 U.S.C. § 2311. A cooperating State that has entered into an agreement with the Secretary acts as "an agent of the United States" and is responsible in carrying out the program prescribed by the Secretary and the statutory mandate. 19 U.S.C. § 2311.

To facilitate payments to the State, the Secretary certifies a payment to the Secretary of

---

[1] As used herein, "Trade Act" refers collectively to the

[2] Or 130 weeks in the case of an adversely affected worker who requires a program of "remedial" education (as described in 19 U.S.C § 2296(a)(5)(D)) in order to complete training approved for the worker under 19 U.S.C § 2296.

Treasury, who in turn, provides the cooperating State with "the sums necessary to enable such a State as agent of the United States to make payments provided for this part." 19 U.S.C. § 2313(a).

In making determinations for benefits, a State is required to apply State law. *See* 19 U.S.C. § 2294; *see also* § 2319(10) (defining "State law" as "the unemployment compensation law of the State"). Any determination by a State agency is "subject to review in the same manner and to the same extent as determinations under the applicable State law, and only in that manner and to that extent." *See* 19 U.S.C. § 2311(d)

Trade Act regulations contain procedures for reviewing cooperating State agencies' compliance (*see* 20 C.F.R. § 617.59(g)), and for helping the Department ensure uniform interpretation and application of the Trade Act (*see* 20 C.F.R. § 617.52).

The Secretary has authority to impost sanctions against any State that fails to fulfill its commitments under its Agreement with the Secretary. The Secretary may terminate the Agreement with the defaulting State (*see* 20 C.F.R. § 617.52(c)(4)(i)), or, under section 3302(c)(3) of the Internal Revenue Code, the Secretary may require a reduction of a State's credit against the federal unemployment tax. *See* 26 U.S.C. § 3302(c)(3). Before reducing a State's credit against the federal unemployment tax, the Secretary must give the State agency reasonable notice and an opportunity for a hearing. *See* 20 C.F.R. § 617.59(f).

**B. PLAINTIFF'S APPLICATIONS FOR TRADE ACT BENEFITS**

Plaintiff worked as a senior manufacturing engineer for Electrogas, Inc. from May 2001 until he was laid-off in June 2002.[3] On July 14, 2003 the U.D. Department of Labor ("DOL") certified that the workers laid off at Electrogas, Inc. were eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974.

Plaintiff alleges he applied to EDD for basic TRA, additional TRA, training benefits, and remedial education benefits under the Trade Act. EDD issued multiple written denials of Plaintiff's applications for basic TRA, additional TRA and training benefits, on various grounds. Plaintiff appealed each denial, and each denial was eventually overturned either by an Administrative Law

---

[3] This summary of the factual background is based on the allegations set forth Plaintiff's Complaint, to which the reader is referred for specific details of Plaintiff's allegations..

1  Judge or the California Unemployment Insurance Appeals Board (the "Board"). Plaintiff alleges that
2  Defendant Crawley orally denied his application for remedial education benefits, but refused to issue
3  any written determination. EDD eventually paid Plaintiff his training benefits. But Plaintiff alleges
4  that, despite the determinations of the ALJs and the Board overturning the denial of additional TRA,
5  EDD has failed to pay the additional TRA. Plaintiff also appears to allege that EDD reduced the
6  amount of his basic TRA from without justification.

7  **III.    LEGAL STANDARDS FOR MOTION TO DISMISS**
8  **A.    RULE 12(b)(1)**

9  Rule 12(b) provides, in relevant part that "a party may assert the following defenses by
10 motion: (1) lack of subject-matter jurisdiction." A Rule 12(b)(1) motion can attack the substance of
11 a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing may rely on
12 affidavits or any other evidence properly before the court. See *Thornhill Publishing Co. v. General
13 Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th
14 Cir. 1989).

15 "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen
16 Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of
17 establishing subject matter jurisdiction. A court must presume lack of jurisdiction until the plaintiff
18 establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v.
19 Breeland*, 792 F.2d 925, 927 (9th Cir.1986) (The party seeking to invoke federal court jurisdiction
20 has the burden of establishing that jurisdiction is proper.).

21 If a plaintiff lacks standing to bring a cause of action, that cause of action must be dismissed
22 for lack of subject matter jurisdiction. *See, e.g., Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d
23 1100, 1102 (9th Cir. 2006).

24 **B.    RULE 12(b)(6)**
25 Rule 12(b) of the Federal Rules of Civil Procedure provides, in relevant part that "a party
26 may assert the following defenses by motion: * * * * (6) failure to state a claim upon which relief
27 can be granted." A cause of action will be dismissed for failure to state a claim only where there is
28 either "a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In evaluating a Rule 12(b)(6) motion, courts must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). *Pro se* pleadings are to be "liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *see also Federal Express Corp. v. Holowecki*, --- U.S. ---, 128 S.Ct. 1147, 1158 (2008) ("*pro se* litigants are held to a lesser pleading standard than other parties").

In order to survive a Rule 12(b)(6) motion to dismiss, the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *See Erickson v. Pardus*, 127 S.Ct. at 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).

Matters outside the pleadings are not usually appropriate on a motion to dismiss. *Cassettari v. County of Nevada*, 824 F.2d 735, 737 (9th Cir. 1987). However, the court may consider any exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988).

C. LEAVE TO AMEND

In general, leave to amend a complaint shall be freely granted by the court where "justice so requires." *See,* FED.R.CIV.PRO. 15. Before dismissing a *pro se* plaintiff's complaint, a district court must give the *pro se* plaintiff an opportunity to amend his complaint unless it is absolutely clear that no amendment could cure the defect. *See, Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

IV. DISCUSSION

A. FIRST CAUSE OF ACTION – ADMINISTRATIVE PROCEDURES ACT CLAIMS

The Administrative Procedure Act ("APA") requires: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. 555(b). Under the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. " Agency action" includes a failure of the agency to act and courts are empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

In order to invoke jurisdiction under the APA, a petitioner must show that: "(1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. Once a petitioner has proven a right to relief under the circumstances, it is the reviewing court's duty to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Gelfer v. Chertoff et al.*, 2007 WL 902382 at *1 (N.D. Cal. 2007), *citing Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004) ("SUWA").

The APA alone does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). However, jurisdiction is present when the APA is combined with 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *see also, Bowen v. Massachusetts*, 487 U.S. 879, 891 n. 16 (1988) ("it is common ground that if review is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331").

### 1. *Dismissal of this Cause of Action Is Warranted as to the Secretary*

Dismissal of the claim against the Secretary is warranted because Plaintiff lacks standing to sue the Secretary. Article III of the United States Constitution requires that a party invoking the court's authority: 1) show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; 2) that the injury fairly can be traced to the challenged action; and 3) the injury is likely to be redressed by a favorable decision. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982). In the present case, Plaintiff has not shown that the third requirement of redressability has been met, because he has not shown that any enforcement action Secretary may take against EDD would redress his injury. This is because neither termination of the Agreement, nor reduction of the State's tax credits, would result in Plaintiff receiving any further benefits.

Because Plaintiff lacks standing for the claim he asserts against the Secretary, the court lacks

jurisdiction and Plaintiff's claim against the Secretary must be dismissed. *See Fleck*, 471 F.3d at 1102.

It appears there are no facts Plaintiff could allege that, if true, would establish the redressability element of standing in this case. Thus, leave to amend would be futile, and dismissal without leave to amend is warranted. *See, Lopez v. Smith*, 203 F.3d at 1130.

### *2. Dismissal of this Cause of Action Is Not Warranted as to the State Defendants*

First, the court finds that the APA applies to the State Defendants when they receive applications from workers for, and provide to workers, payments under Part 2 of the Trade Act, including payments for TRA, Training Benefits and Additional TRA.

Section 2311(a) of the Trade Act provides, in relevant part:

> "The Secretary is authorized on behalf of the United States to enter into an agreement with any State, or with any State agency (referred to in this subpart as "cooperating States" and "cooperating States agencies" respectively). Under such an agreement, the cooperating State agency (1) *as agent of the United States*, will receive applications for, and will provide, payments on the basis provided in this part * * * ." *See* 19 U.S.C. § 2311(a); *see also* 20 C.F.R. § 617.59(e).

The APA provides that "A person suffering legal wrong because of *agency* action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See* 5 U.S.C. § 702 (emphasis added). The APA defines "agency," as used therein, as "each authority of the Government of the United States," with certain exceptions (which are inapplicable here). *See* 5 U.S.C. § 701(b)(1). Taken together these provisions of the Trade Act and the APA render the State Defendants subject to the provisions of the APA when they are receiving applications for Trade Act benefits, and making payments to workers for such benefits.[4]

Dismissal of this cause of action is not warranted as to the State Defendants, because the complaint alleges that they failed to perform at least two non-discretionary acts. Liberally construed, the complaint alleges that the State Defendants failed to: 1) pay him Additional TRA benefits after

---

[4] The State Defendants actually conceded at the hearing of this matter that, when they are receiving applications for, and providing to workers, trade adjustment assistance under the Trade Act they are acting as an "authority of the Government of the United States."

ORDER, *page 7*

the Board[5] approved his application for those benefits; and 2) issue a written determination on his application for remedial education benefit.

The State Defendants' argument that Plaintiff has adequate state remedies through both administrative review and judicial review under California Code of Civil Procedure section 1094.5 misses the point. The review procedures cited by the State Defendants provide no relief in situations where there has been no initial determination to be reviewed or where the determination is fully favorable but EDD nonetheless fails to pay the benefit.[6]

**B. SECOND CAUSE OF ACTION – SECTION 1983 CLAIM FOR ALLEGED VIOLATION OF FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES**

The court analyzes the second cause of action for violations of the First Amendment under the standards for a Section 1983 cause of action. Section 1983 creates a private cause of action against a person who, under color of state law, subjects "[a]ny citizen of the United States or other person within the jurisdiction thereof to a deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . ." of the United States. *See* 42 U.S.C. § 1983.

Plaintiff asserts his second cause of action against Defendants Crawley, Bronow, Smith and Boomer. To the extent Plaintiff is suing these Defendants for damages in their official capacity, Defendants are correct that dismissal is warranted. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials are 'persons' under section 1983"). However, as the State Defendants appear to concede, a plaintiff may assert a damages claim under Section 1983 against officials in their *personal* capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law").

Defendants are mistaken in their assertion that Plaintiff must plead facts sufficient to

---

[5]  As used herein, "Board" refers to the California Unemployment Insurance Appeals Board.

[6]  The court notes that the Trade Act itself limits *review* of determinations to state procedures. *See* 19 U.S.C. § 2311(d) ("A determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent"). However, the Trade Act is silent on the issue of what procedure a worker should follow to *enforce* a favorable determination, or to force a state agency to issue a determination in the first instance.

overcome an anticipated affirmative defense of qualified immunity. On the contrary, "[A] Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

### 1. *Dismissal of this cause of action is not warranted as to Defendant Crawley.*

Qualified immunity protects only "actions taken pursuant to discretionary functions." *See, F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) citing *Davis v. Scherer*, 468 U.S. 183, 196 n. 14 (1984). "Ministerial acts are unshielded by qualified immunity." *See Groten*, 251 F.3d at 851.

In the present case, Plaintiff alleges that, by refusing to issue a written determination on Plaintiff's application for remedial education benefits, Defendant Crawley violated his First Amendment right to petition government. Having orally denied the application, the act of issuing a written determination is clearly a ministerial act. Thus, qualified immunity is unavailable.

Even if the defense were available, Defendants Crawley has not shown how, based on the complaint itself, the court could determine as a matter of law that he has qualified immunity.

### 2. *Dismissal of this cause of action is warranted as to Defendants Bronow, Smith and Boomer*

Plaintiff alleges Defendants Bronow, Smith and Boomer failed to adequately train and supervise Defendant Crawley, and that such failure was a proximate cause of his injury. However, an official can only be sued under Section 1983 "if he *personally* violated a plaintiff's constitutional rights." *See Whitaker v. Garcetti*, 486 F.3d 572, 582 (9th Cir. 2007) (emphasis added). Thus, dismissal of the second cause of action is warranted as to Defendants Bronow, Smith and Boomer.

### C. THIRD AND FOURTH CAUSES OF ACTION – SECTION 1983 CLAIMS FOR ALLEGED VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS

The State Defendants argue that Plaintiff has not stated a cause of action because there is purportedly no allegation that he was deprived of any property, and because he purportedly had an adequate state remedy.

Plaintiff clearly alleges at least two deprivations of property interests. At page 26, lines 24–26 of his Complaint, Plaintiff alleges that Defendant Crawley orally denied his application for

remedial education benefits under the Trade Act, but that Defendant Crawley refused to issue a determination. At page 27, lines 18–20 of his Complaint, Plaintiff alleges that an Administrate Law Judge later ordered Defendant Crawley to issue a written determination. At page 31, line 3, header N states "339 Days After ALJ Ordered EDD Pay Additional TRA, EDD Refuses." At page 31, lines 4–8, Plaintiff states "December 11, 2007, 403 days after ALJ Sure had reversed EDD's decision and approved plaintiff's Additional TRA benefit, and 245 days after the Board affirmed, plaintiff filed this complaint to, among other things, as this court for assistance in bringing EDD in compliance with the law that governs their conduct in administering the Act in California and the decisions of the ALJ and the Board." Construing these allegations liberally, as the court must with a *pro se* complaint, they show an alleged deprivation of a property interest, Trade Act benefits.[7]

      The State Defendants cite California Code of Civil Procedure, section 1085, as the purportedly adequate state remedy. To the extent the State Defendants are arguing that Section 1085 authorizes a court to enforce the ALJ's order directing Defendant Crawley to issue a written determination, and to order the EDD to pay the benefits affirmed by the Board, then there is an adequate state remedy. Because the court finds that there is federal question jurisdiction, it has supplemental jurisdiction over any such state law cause of action for mandate under Section 1085.

      Thus, the court will tentatively deem this cause of action to be one for mandate under Section 1085. If the State Defendant's believe Section 1085 would *not* authorize the court, upon proper proof at trial, to mandate Defendant Crawley to comply with the ALJ's order directing him to issue a written determination, or to order the EDD to pay Additional TRA benefits pursuant to the Board's decision, then they shall file a supplemental brief stating their position in that regard no later than May 15, 2009. In that event, this order will be deemed amended to find that Plaintiff's Complaint does state a due process claim under Section 1983, because no other state remedy has been identified that would address either Defendant Crawley's alleged failure to issue a written determination on one of Plaintiff's applications, or EDD's failure to abide by a Board decision.

---

[7] The Supreme Court has found "property" interests in a number of government benefits and services, including such things as government benefits such as welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254 (1970); disability benefits, *Mathews v. Eldridge*, 424 U.S. 319 (1976).

### D.  FIFTH CAUSE OF ACTION – SECTION 1983 CLAIM FOR ALLEGED VIOLATIONS OF THE TRADE ACT

The Supreme Court has developed a three-prong test to determine if a particular federal statute confers a right enforceable under Section 1983. In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Court held that a federal statute confers an individually enforceable right if: 1) Congress intended the statutory provision to benefit the plaintiff; 2) the right asserted is not so vague and amorphous such that its enforcement would strain judicial competence; and 3) the provision is couched in mandatory rather than precatory terms. *Id.* at 340-41. If a particular statute fulfills the requirements of this test, it raises a presumption of enforceability that may be rebutted either explicitly (with language in the statute specifically precluding an alternate remedy), or implicitly (if Congress provided a comprehensive enforcement scheme that is incompatible with individual enforcement under Section 1983).

The Supreme Court clarified the first prong of *Blessing* in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), holding that Congress must "unambiguously confer a right" by phrasing statutory language in "the terms of the persons benefitted." *Id.* at 284. The statute must focus on the individual's entitlement to federally created rights and not on an evaluation of the system-wide performance of a State's aggregate services. *Id.* at 281-82. The statutory language should be phrased in "specific rights creating terms" and "confer [those] rights on a particular class of persons." *Id.* at 284-85.

The *Gonzaga* Court cited *Wilder v. Virginia Hospital Assn.*, 496 U.S. 498 (1990), to illustrate an instance where a federal statute conferred an individual right. In *Wilder,* the Court held that a reimbursement provision of the Medicaid Act was enforceable under Section 1983 because "it explicitly conferred specific monetary entitlements upon the plaintiffs." *Wilder*, 496 U.S. at 522. The Court explained that Congress left "no doubt of its intent for private enforcement because the provision required the States to pay an 'objective' monetary entitlement to health care providers with no sufficient administrative means of enforcing the requirements against States that failed to comply." *Id., cited in Gonazaga*, 536 U.S. at 280-81; *see also Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 421 (1987) ("it is said [plaintiffs] may sue [] in state courts and

enforce their [federal] rights in that litigation.  Perhaps they could, but the state-court remedy is hardly a reason to bar an action under § 1983, which was adopted to provide a federal remedy for the enforcement of federal rights").

### 1.  *The Trade Act Confers Individually Enforceable Rights*

#### a.  Congress intended the trade act to benefit Plaintiff

It is clear from the structure and text of the Federal Trade Act that Congress intended to benefit individual workers certified by the Secretary of Labor.  The statute refers to specific classes of individuals including individual workers.  For instance, the provisions are included under the umbrella title "Adjustment Assistance for Workers."  Section 2291 lists specific details concerning the qualifications of workers, and the language continually refers to "workers," and "payments. . . made to an adversely affected worker."  19 U.S.C.A 2291(a).  Section 2292(b) focuses on "any adversely affected worker who is entitled to readjustment allowances," and Section 2295 states that "[t]he Secretary shall make every reasonable effort to secure for adversely affected workers. . .such services through agreements with the States."  19 U.S.C.A. 2292(b); 19 U.S.C.A. 2295.  Section 2296, entitled "Training," operatively refers to "workers" in each subsection and section 2297 refers to "adversely affected workers covered by a certification. . . ."  19 U.S.C.A. 2296.

The statute unambiguously targets workers certified by the Secretary of Labor, and focuses almost exclusively on the specific entitlements they may receive under the Act.

#### b.  The rights Plaintiff asserts are not so vague or amorphous such that enforcement would strain judicial competence

The right asserted in this matter is entitlement to trade adjustment benefits.  The limits of this right are clear, specific, and carefully circumscribed within the statute.  Section 2291 clearly states that payment shall be made to "an adversely affected worker covered by certification" and sets strict time lines for: (1) the application for benefits; (2) the amount of a benefit; (3) when the benefit is to be delivered; and (4) the duration of the benefit.  Section 2293 provides guidelines for training, deadlines, maximum allowances, exceptions, and relevant adjustments to be made for each individual worker who fits within a statutorily defined category.  The amount of each adjustment is specific.  Sections 2272 and 2273 each provide detailed guidelines for the Secretary's designation of

workers. Section 2313 is clear about the role States play within the implementation scheme and clearly delineates the consequences of non-compliance.

It would be difficult to argue that the enforcement of these clear guidelines would "strain judicial competence."

    c.    <u>The relevant provisions are couched in terms that are mandatory rather than precatory</u>

The Trade Act is cast in unambiguous terms and uses affirmative language in almost every relevant section. Section 2291 states "Payment of a trade adjustment allowance *shall* be made to an adversely affected worker covered by certification under sub-part A. . . ." 19 U.S.C. § 2291 (emphasis added). Section 2292 states, in part, "any adversely worker entitled to receive trade adjustment allowances . . . *shall* receive. . . ." 19 U.S.C. § 2292(b) (emphasis added). Section 2296 states, in part, "[t]he Secretary *shall* approve such training for the worker. Upon such approval, the worker *shall* be entitled to have payment of the cost of training. . . ." 19 U.S.C. § 2296(a)(1) (emphasis added).

### 2. *The Trade Act Does Not Foreclose a Section 1983 Remedy*

Section 2311(d) provides that:

"A determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent."

While this section expressly forecloses any remedy under Section 1983 in situations where a claimant disagrees with a determination by a cooperating State agency, it is silent with regard to what remedy a claimant has to enforce the state's duties: 1) to actually issue a written determination on an application for benefits in the first instance; and 2) after issuing a favorable determination, to actually pay claimant the benefits to which it has determined he is entitled.

The only other enforcement mechanism included in the Trade Act is the Secretary of Labor's discretionary right to take action against states that she believes are not in substantial compliance with their respective Cooperating State Agreements. This mechanism is designed to provide general supervision and oversight, not to vindicate individual claimants' rights.

In the Trade Act, Congress neither expressly foreclosed a remedy under Section 1983, nor created any comprehensive enforcement scheme that is incompatible with individual enforcement under Section 1983, other than for *review* of a state's determination. Because Plaintiff does not seek *review* of any determination by EDD, his section 1983 cause of action is not foreclosed.

### E.  SIXTH, SEVENTH & EIGHTH CAUSES OF ACTION – CONSPIRACY

Plaintiff alleges three conspiracy causes of action, including claims under 42 U.S.C. §§ 1985(3) and 1986. Defendants argue Plaintiff has not pled sufficient facts to support the claimed conspiracy. Plaintiff alleges that the Defendants, in addition to the actions they each took, had an agreement to deprive him of his rights and property interests. Liberally construed, Plaintiff's Complaint adequately states these conspiracy causes of action.

### F.  NINTH CAUSE OF ACTION – 42 U.S.C. § 2000d

Plaintiff asserts a claim under Section 2000(d), alleging that the State Defendants denied him federally funded benefits based on his race or national origin. Defendants argue that Plaintiff hasn't alleged he was a member of any particular race or national origin. Defendants cite no authority requiring Plaintiff to allege his specific race or national origin. Liberally construed, Plaintiff's Complaint adequately states this cause of action.

### G.  TENTH – FOURTEENTH CAUSES OF ACTION – STATE LAW CLAIMS

Plaintiff asserts various state law tort claims, including slander and intentional infliction of emotional distress. The State Defendants argue that they cannot be sued in their personal capacities for state law torts under Section 1983. This argument fails because Plaintiff is not bringing these causes of action under Section 1983. These are straight forward state law causes of action.

The State Defendants also argue that the remark that Plaintiff was engaged in a "mad grab for money" is "hardly slander." Whether that remark constitutes slander is a question of fact for the jury.

Finally, the State Defendants argue that, absent a valid federal claim, any state claims must be heard in state court. This argument fails because, as discussed herein, Plaintiff's federal claims are surviving the State Defendants' motion to dismiss.

### H.   CLAIM FOR INJUNCTIVE RELIEF

Plaintiff seeks injunctive relief against all Defendants.

As discussed in Section III.A.1., supra, Plaintiff lacks standing to assert any of his claims against the Secretary.

The State Defendants argue Plaintiff does not have standing to seek injunctive relief because he has already received all benefits to which he is entitled. They further argue that, even if there are some additional benefits to which he believes he is entitled and has not received, he has an adequate remedy under state law, citing *Schwieker v. Chilicky* 487 U.S. 412, 426 (1988). In *Schwieker*, the Supreme Court found that the Social Security Act makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits. It did not address injunctive relief under Section 1983.

Section 1983 permits plaintiffs to maintain a claim against named state officials in their official capacity insofar as the claim seeks only prospective injunctive relief. *See Will v. Michigan Department of State Police*, 491 U.S. at 71 n. 10 (a state official acting in her official capacity is a "person" under Section 1983). The Eleventh Amendment does not bar this aspect of Plaintiff's Section 1983 claims. *See Milliken v. Bradley,* 433 U.S. 267, 289-290 (1977) (an exception to Eleventh Amendment immunity allows federal courts to enjoin state officials to conform their conduct to requirements of federal law). Plaintiff may also proceed with his Section 1983 claim against the named officials in their individual capacities for both retrospective and prospective relief. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts").

Dismissal is warranted as to EDD, however, because it is not a "person" under Section 1983. *See Will v. Michigan Department of State Police*, 491 U.S. at 71.

### V.   CONCLUSION

For all the reasons discussed herein,

IT IS HEREBY ORDERED that Defendant Secretary of Labor's motion to dismiss is

GRANTED, with prejudice, as to all causes of action against the Secretary.

IT IS FURTHER ORDERED that the State Defendants' motion to dismiss is DENIED as to Plaintiff's first cause of action.

IT IS FURTHER ORDERED that the State Defendants' motion to dismiss is GRANTED as to Plaintiff's second cause of action against Defendants Bronow, Smith and Boomer only. It is DENIED as to Plaintiff's second cause of action against Defendant Crawley in his personal capacity.

IT IS FURTHER ORDERED that the State Defendants' motion to dismiss is DENIED as to Plaintiff's third through fourteenth causes of action against the individual State Defendants in their personal capacity.

IT IS FURTHER ORDERED that the State Defendants' motion to dismiss is DENIED as to Plaintiff's claims for injunctive relief against the individual Defendants in their official capacity.

IT IS FURTHER ORDERED that the State Defendants' motion to dismiss is GRANTED as to Plaintiff's second through fourteenth causes of action to the extent they are alleged against EDD, based on Eleventh Amendment immunity. Plaintiff is granted leave to file an amendment to his complain with regard to EDD if he can state a claim against EDD for which California has waived sovereign immunity. Plaintiff must file any such amendment no later that May 30, 2009.

IT IS FURTHER ORDERED that Plaintiff and the individual State Defendants shall appear for Case Management Conference at 2:00 p.m. on May 12, 2009. These parties shall file a Joint Case Management Conference Statement no later than May 5, 2009.

Dated: *4/20/09*

PATRICIA V. TRUMBULL
United States Magistrate Judge