**E-Filed 9/9/2011**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| REZA NAGAHI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT, *et al.*<br><br>　　　　Defendants. | Case Number 5:07-cv-06268 JF (PSG)<br><br>**ORDER[1] GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: Docket Nos. 202, 204] |

Plaintiff Reza Nagahi ("Nagahi") brings this action against Defendants Tom Campbell, Peter Kindschi, Forest E. Boomer, Talbott A. Smith, Pauline Gee, James Crawley, and Deborah Bronow in their individual and official capacities as current or former employees of the California Employment Development Department ("EDD").[2] Nagahi seeks compensatory and injunctive relief for Defendants' alleged failure to pay him benefits under the Trade Act of 1974, 19 U.S.C. § 2101, *et seq.* (P.L. 93-618, as amended) and the Trade Act of 2002, 19 U.S.C. § 3801 (P.L. 107-210, as amended) (collectively the "Trade Act").

The parties have filed cross-motions for summary judgment, and Nagahi also has filed a

---

[1] This disposition is not designated for publication.

[2] The EDD previously was dismissed as a defendant because it is immune from suit in federal court pursuant to the Eleventh Amendment. *See* Order Granting Defendant Sec. of Labor's Motion to Dismiss and Denying in Part and Granting in Part State Defendants' Motion to Dismiss, Dkt. 78.

motion to strike evidence submitted by Defendants in support of their motion for summary judgment.[3] Having considered the moving and responding papers and the oral arguments presented at the hearing on the motions, the Court will dispose of the motions as discussed below.

## I. BACKGROUND

The following summary is based on the allegations in the complaint and the parties' declarations in support of their respective motions for summary judgment. On June 28, 2002, Nagahi was terminated by his employer, Electroglas, Inc. ("Electroglas"). He then sought federal financial assistance from the EDD pursuant to the Trade Act. The Trade Act provides for the payment of Trade Readjustment Allowances ("TRA") through the Trade Adjustment Assistance ("TAA") program. *See* 19 U.S.C. §§ 2291(a) and 2293(a)(2). TRA benefits are paid to individuals who have lost their jobs as a result of competition from international trade. In order for an employee to qualify for such benefits, the United States Department of Labor must certify the employee's separation as "adversely affected" for purposes of the Trade Act. *Id.* at § 2273.

On July 14, 2003, the Department of Labor issued a certification of eligibility with respect to Nagahi's separation. Nagahi subsequently submitted an application for TRA benefits.[4] After processing the application, the EDD informed Nagahi that despite his eligibility for basic TRA benefits, he would need to exhaust all regular unemployment insurance benefits before the TRA payments could be disbursed. *See Id.* at §§ 2291(a), (a)(3)(b) ("Payment of a trade readjustment allowance shall be made to an adversely affected worker . . . if . . . such worker . . . has exhausted all rights to any unemployment insurance"). Although Nagahi did not have a

---

[3] Nagahi seeks to strike various exhibits submitted by Defendants because the documents are not redacted to conceal his social security identification number or his date of birth. Although there are two pending motions to strike, they are identical in nature. *See* Dkt., 211, 220. The proper remedy is to seal the documents rather than to strike them altogether. In light of the sensitive nature of the information, the Court will issue an administrative order sealing the documents pursuant to Civ. L.R. 79-5.

[4] Nagahi previously had requested benefits from EDD, but his initial request was denied because his separation from employment had yet to be certified.

regular unemployment insurance claim on file at the time,[5] he eventually did file such an application, and his eligibility for unemployment benefits was established on November 23, 2003. Benefits from the unemployment claim were exhausted on May 8, 2004.

Despite his eligibility for the TRA program following the exhaustion of his unemployment payments, Nagahi did not act immediately to obtain TRA benefits. When he did contact EDD for this purpose on October 15, 2004, he was informed that he no longer was eligible for TRA assistance because under federal law, TRA benefits expire two years after an employee's date of separation, which in this case was June 26, 2004. 20 C.F.R. § 617.15 ("An individual shall not be paid basic TRA for any week beginning after the close of the 104-week eligibility period. . ."); *Id.* at § 617.3(m)(1) ("the 104-week period begin[s] with the first week following the week in which such total qualifying separation occurred. . ."). Nagahi appealed this determination, and the EDD's San Jose Office of Appeals ruled in his favor, concluding that Nagahi was entitled to receive TRA benefits from the date his regular unemployment aid ended until the mandatory two-year expiration date for TRA benefits (May 9, 2004-June 26, 2004). The EDD then made back payments to Nagahi for this period.[6]

Nagahi subsequently asserted that he was entitled to additional TRA benefits ("A6 benefits") because he was pursuing a master's degree in Industrial and Systems Engineering at San Jose State University. Under the Trade Act, A6 benefits are available to individuals who are enrolled in a certified TAA training program and otherwise meet the criteria for TRA benefits. *Id.* at § 617.15. Individuals have 210 days from the date of separation from employment or certification by the Department of Labor, whichever is later, to enroll in qualified training for the purpose of receiving A6 benefits. *Id.* ("To be eligible for TRA for additional weeks, an individual must make a bona fide application for such training (i) within 210 days after the date

---

[5] Nagahi's claim for regular unemployment insurance expired in June 2003, one year after his termination by Electroglas.

[6] Nagahi did not receive a final payment on June 26, 2004, for the week ending on that date because by his own admission he was incarcerated at that time and thus ineligible to receive an award under Cal. Unemployment Insurance Code § 1253(c), which requires that beneficiaries be "able and available" to seek employment.

3
Case Number 5:07-cv-06268 JF (PSG)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC1)

of the first certification under which the individual is covered, or (ii) if later, within 210 days after the date of the individual's most recent partial or total separation."). Based on this timeline, Nagahi was required to enroll not later than February 9, 2004.[7] However, Nagahi did not consult the EDD's job services representatives until January 2005.

Nagahi appealed the denial of additional TRA benefits. On appeal, an administrative law judge ("ALJ") found that Nagahi was enrolled in an approved training program from August 24, 2005 through September 2006. Consistent with this finding, the ALJ ordered the EDD to determine Nagahi's eligibility for A6 benefits during that period. The EDD found Nagahi ineligible because he had not enrolled in a TAA training program within the time period proscribed by 20 C.F.R. § 617.15.

Nagahi once again appealed, and the ALJ found that he was eligible to receive A6 benefits for the weeks in which he participated in an approved training program.[8] The EDD appealed the ALJ's decision to the California Unemployment Insurance Appeals Board ("CUIAB"), which affirmed the decision. The CUIAB also considered Nagahi's cross-appeal, in which Nagahi sought to change the training dates established by the ALJ's original decision. The CUIAB observed that while the question of reimbursement for Nagahi's training expenses was not at issue, Nagahi had provided inconsistent testimony in relation to the dates of his participation in training.[9]

If Nagahi had entered a training program in January 2005, he would have been eligible for A6 benefits at a rate of $330 per week throughout his enrollment period. However, if he did not enroll until August 2005, he would have been required to accept a regular unemployment

---

[7] Although Nagahi was terminated from Electroglas on June 28, 2002, his separation was not certified by the Department of Labor until July 14, 2003. Thus, Nagahi had 210 days from July 14, 2003 to enroll in a TAA-certified program.

[8] The ALJ issued an initial opinion on November 3, 2006, which later was amended on November 28, 2006 to correct a clerical error.

[9] Specifically, Nagahi testified originally that his training began in August 2005 and testified later that it began in January 2005.

4

Case Number 5:07-cv-06268 JF (PSG)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC1)

insurance award prior to recovering A6 benefits. Because Nagahi was employed for a portion of the fiscal quarter ending March 2005, he generated new wages during that period. Accordingly, he was required to exhaust all regular unemployment insurance aid before recovering TRA benefits pursuant to §§ 2291(a)(3)(b). However, Nagahi never has filed a claim for unemployment benefits stemming from the termination of his employment in 2005, and the EDD has not disbursed the relevant A6 benefits. The EDD did reimburse Nagahi in 2007 in the amount of $10,469.67 for his tuition and education-related expenses at San Jose State University.

Despite having received reimbursement for his educational expenses, Nagahi asserts that Defendants have yet to provide him with the A6 benefits to which he is entitled under the rulings of the ALJ and CUIAB. He also asserts that remedial education benefits have been withheld improperly because the EDD has not issued a written determination concerning his application for such benefits.[10] Nagahi seeks compensatory and injunctive relief, alleging violations of the First, Fifth, and Fourteenth Amendments; the Administrative Procedure Act 5 U.S.C. §§ 701-06, ("APA"); and 42 U.S.C. §§ 1983, 1985-86, and 2000d.[11]

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions

---

[10] Nagahi alleges that the EDD has violated his First Amendment right to petition the government by refusing to issue a written determination. He asserts this claim against Defendant Crawley only. Originally, Nagahi also asserted this claim against Defendants Boomer, Bronow, and Smith. However, the claim was dismissed as to these Defendants because they did not personally violate Nagahi's constitutional rights, and thus cannot be sued in their official capacity under 42. U.S.C. § 1983. *See* Order Granting Defendant Sec. of Labor's Motion to Dismiss and Denying in Part and Granting in Part State Defendants' Motion to Dismiss, Dkt. 78.

[11] Additional state law claims brought by Nagahi were dismissed by Magistrate Judge Trumbull because there was no evidence that Nagahi had complied with the Tort Claims Act. *See* Order Denying in Part, Granting in Part, and Deferring in Part Defendants' Motion for Summary Judgment, Dkt. 155; Cal. Gov. Code §§ 911.2, 911.4, 915, 945, 950.2. Nagahi nonetheless attempts to reassert these claims in his moving papers.

of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Ninth Circuit decisions subsequent to *Celotex* have applied the same standard. *See, e.g., Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) ("Under . . . *Celotex* . . . [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."); *Farrakhan v. Gregoire*, 590 F.3d 989, 1003 (9th Cir. 2010), ("Put differently, when the nonmoving party has the burden of proof at trial, as Plaintiffs do here, the party moving for summary judgment. . . need only point out that there is an absence of evidence to support the nonmoving party's case.").

If the moving party meets its initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson,* 477 U.S. 242, 248-49; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991).  However, "[a] non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

### III. DISCUSSION

**A.  Law of the Case**

As a threshold matter, Nagahi contends that Defendants' motion for summary judgment should be denied because Magistrate Judge Trumbull already addressed Defendants' legal arguments when she ruled on Defendants' previous motion for judgment on the pleadings. *See* Order Denying in Part, Granting in Part, and Deferring in Part Defendants' Motion for Summary Judgment, Dkt. 155. "Under the 'law of the case' doctrine, a court is ordinarily precluded from

reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006). However, Magistrate Judge Trumbull's order was based only on the facts alleged in Nagahi's complaint. It did not preclude Defendants from bringing a renewed motion for summary judgment based on a developed record.

**B. Res Judicata**

Nagahi also asserts that Defendants' arguments are precluded because they were not presented during the administrative appeals process. Specifically, Nagahi contends that Defendants have offered new reasons for failing to comply with the Trade Act and the ALJ and CUIAB decisions. However, the new evidence and arguments in question relate to the question of how the EDD determined Nagahi's eligibility for TRA benefits pursuant to the administrative rulings. *See, e.g.,* Crawley Decl., Ex. F (ALJ Order dated January 21, 2005, discussing eligibility for basic TRA benefits after May 9, 2004, and concluding that "[b]enefits are payable, *provided the claimant is otherwise eligible*"), Dkt. 202 (emphasis added); *Id.* at Ex. I (ALJ Order dated November 28, 2006, discussing eligibility for additional TRA benefits, and concluding that "[b]enefits are payable, *provided the claimant is otherwise eligible*") (emphasis added). This issue obviously is relevant to Nagahi's federal claims.

**C. Delayed Disbursement of A6 Benefits**

The decisions issued by the ALJ and the CUIAB establish that Nagahi is entitled to A6 benefits for the period during which he was enrolled in an approved TAA training program, to the extent that he otherwise is eligible for such benefits under the Trade Act. *Id.* at Ex. I; *Id.* at Ex. J (CUIAB Order dated April 5, 2007, affirming ALJ decision with respect to A6 benefits). The regulations promulgated under the Act make clear that TRA assistance is not available to eligible individuals until regular unemployment aid has been exhausted. 20 C.F.R. § 2291(a)(3)(b). Whether Nagahi still must exhaust an unemployment claim before drawing from his A6 benefits depends on a determination as to the period for which his enrollment at San Jose State University was certified as an approved training program under the Act.

To make this determination, the Court need not credit Nagahi's assertion that he entered the training program in January 2005, because that assertion is in direct contradiction with prior

Case Number 5:07-cv-06268 JF (PSG)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC1)

testimony in which he indicated that he entered the program in August 2005.  *See* Crowley Decl., Ex. J (CUIAB Order dated April 5, 2007) ("[Nagahi] testified on June 22, 2006 that his training began in August 2005 . . . and on October 25, 2006 that it began in January 2005 . . ."). Inconsistent testimony inherently is unreliable and draws the credibility of the declarant into question. *Kalouma v. Gonzales* 512 F.3d 1073, 1077 (9th Cir. 2008) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness.") (quoting *United States v. Hale*, 422 U.S. 171, 176, (1975)); *Cf. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); Fed. R. Evid. 801.

Moreover, the ALJ already has determined that Nagahi was enrolled in an approved program between August 2005 and September 2006.  Crowley Decl., Ex. G (ALJ Order dated June 28, 2006) ("It is found that the claimant's program for a master's degree in [I]ndustrial and Systems Engineering is an approved program for the period of August 2005 to September 2006.").  Although Nagahi began his studies at San Jose State University in January 2005 as evidenced by his training reimbursement contract, *Id.* at Ex. L, his program was approved for TAA certification only for the period between August 2005 and September 2006.  "[U]nless state court review of the administrative findings is sought, an administrative hearing adjudication binds the parties on the issues litigated." *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994) (citation omitted).  "[A]s a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983."  *Id.* at 1031-32.

Because he was employed for a period of time prior to qualifying for participation in an approved program in August 2005, Nagahi is required to exhaust unemployment insurance assistance before the EDD can disburse his A6 benefits.  While Nagahi does not dispute that he was employed temporarily in 2005, he has yet to file the requisite unemployment claim.  Thus, as a matter of law, Defendants have not withheld A6 benefits improperly.

Because the record shows that they have complied with the obligations under the Trade

8

Act, Defendants are entitled to summary judgment on all claims premised upon unlawful agency action with respect to the payment of A6 benefits. To the extent that he asserts that benefits have been withheld because of racial discrimination, Nagahi has failed to produce any relevant evidence of discriminatory intent. He points to several excerpts from the administrative record, including a statement from the ALJ that the proceedings "[have] gotten entirely too personal between both sides." Nagahi Request for Judicial Notice ("RJN"), Ex. 10, Dkt. 217. However, the excerpts alone are not probative of a discriminatory purpose. Discrimination often is very subtle, but objective evidence must be presented to support such a claim. *See Washington v. Davis*, 426 U.S. 229 (1976).

**D. Eligibility for Remedial Education Benefits**

Nagahi also maintains that Crawley unlawfully has withheld remedial education benefits to which Nagahi is entitled. Citing the ALJ and CUIAB rulings, Nagahi asserts that the EDD was ordered to issue a written decision as to his request for these benefits, but that Crawley has yet to provide him with a written determination of eligibility.

Whether or not a written determination should have issued, the Court concludes that the claim is moot, as Nagahi has never qualified for such benefits. *See* 20 CFR § 617.21-22(a). As explained by Defendant Campbell,[12] remedial education benefits are available only to Trade Act-eligible participants who need basic educational training, such as a general education diploma. Campbell Decl. ¶ 9, Dkt. 202. As a former engineer with a bachelor's degree, Nagahi obviously does not meet this description.

### IV. ORDER

Good cause therefor appearing, Defendants' motion for summary judgment is GRANTED, and Nagahi's cross-motion for summary judgment is DENIED. Nagahi's request for judicial notice in support of his motion for summary judgment is GRANTED as to the portion of the administrative record identified in Ex. 10. Nagahi's motions to strike certain evidence produced by Defendants are TERMINATED without prejudice. Within seven (7) days of the date

---

[12] Campbell served as the California Trade Act Coordinator from 2000-2007.

of this order Nagahi shall submit a proposed order setting forth the documents or portions thereof that he seeks to have sealed. The Clerk of the Court shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: September 9, 2011

_____
JEREMY FOGEL
United States District Judge